JOHN J VERTREES *et al. v.* STATE BOARD OF ELECTIONS
*et. al.*

(*Nashville.* December Term, 1919.)

1. **ELECTIONS. Woman suffrage. Validity.**

Acts 1919, chapter 139, authorizing women to vote for presidential
and vice presidential electors, is valid under Constitution, article 7,
section 4, providing the election of all officers not otherwise provid-
ed for by the Constitution shall be made in such manner as
legislature may direct. (*Post, pp.* 650-657.)

Acts cited and construed: Acts 1919, ch. 139.

Cases cited and approved: Ledgerwood v. Pitts, 122 Tenn., 570;
Scown v. Czarnecki, 264 Ill., 305; Hanna v. Young, 84 Md., 179;
State v. Hanson, 80 Neb., 724; State v. Dillon, 32 Fla., 545;
Spitzer v. Fulton, 172 N. Y., 285; Richardson v. Young, 122 Tenn.,
471; Wheeler v. Brady, 15 Kan., 26; State v. French, 96 Ohio
St., 172.

Constitutions cited and construed: Art. 1, sec. 5; Art. 4, sec.
1; Art. 3, sec. 2; Art. 6, secs. 3, 4, 13, 15; Art. 7, secs. 1, 4.

2. **TAXATION. Poll tax. Statute. Validity. Tax on women.**

Constitution article 2, section 28, making male citizens liable for
poll taxes, etc., does not impliedly prohibit the legislature from
imposing a poll tax on women. (*Post, pp.* 657-660.)

3. **TAXATION. Legislative power.**

Right to tax is essential to the existence of government, and the
legislative power in this respect can only be restricted by dis-
tinct and positive expressions in the Constitution. (*Post, pp.* 657-
660.

4. **ELECTIONS. Woman suffrage. Validity.**

Acts 1919, chapter 139, authorizing women to vote at certain elec-
tions and requiring them to furnish evidence of payment of poll
taxes in same manner as men, etc., does not discriminate against
men upon ground that no poll tax is levied against women, since

Vertrees v. State Board of Elections.

such difference is due, not to the suffrage act, but to Constitution, article 2, section 28, requiring males to pay poll taxes, and legislature's failure to pass a law taxing women. (*Post, pp.* 657-660.)

Acts 1919, chapter 139, authorizing women who have resided within

Cases cited and approved: Kuntz v. Davidson County, 74 Tenn., 65.

Codes cited and construed: Secs. 1220, 1221, 813a2, 1226 (T.-S.).

Constitution cited and construed: Art. 2, sec. 28.

5. **ELECTIONS. Woman suffrage. Validity.**

Acts 1919, chapter 139, authorizing women who have resided within county for preceding six months to vote at municipal elections, etc., does not repeal Nashville city charter (Private Acts 1919, chapter 22, section 5), requiring a six months' residence in city before voting; and suffrage statute is therefore not invalid upon ground that it discriminates by allowing women to vote after a shorter city residence than is required of men. (*Post, pp.* 661, 662).

6. **STATUTES. Repeal by implication. General and special laws.**

A general law does not repeal a special law unless such a legislative intent clearly appears. (*Post, pp.* 661, 662.)

Acts cited and construed: Acts 1919, ch. 139; Acts 1919, ch. 22, sec. 5.

Case cited and construed: Burnett v. Maloney, 97 Tenn., 697.

7. **STATUTES. Title. Sufficiency. Woman suffrage act.**

Constitution, article 2, section 17, requiring statutes to contain only one subject expressed in the title, is not violated by Acts 1919, chapter, 139, authorizing women to vote at certain elections. (*Post, p.* 662.)

Constitution cited and construed: Art. 2, sec. 17.

8. **ELECTIONS. Ballot boxes. Joint resolution of legislature. Effect.**

A joint resolution by the legislature purporting to empower election boards to provide separate ballot boxes for women, conferred no additional power on election officers, but may be considered as an expression of legislative advice and opinion that election officers already had necessary power to take such steps. (*Post, pp.* 662-666.)

Vertrees v. State Board of Elections.

9. **ELECTIONS. Woman suffrage. Ballot boxes.**

Election officers have power to provide separate ballot boxes for women in order to prevent fraud, especially in view of the joint resolution of legislature recommending and directing such a course. (*Post, pp.* 662-666.)

10. **ELECTIONS. Woman suffrage. Validity.**

Acts 1919, chapter 139, authorizing women to vote for certain officers, etc., it not void because affording opportunity for fraud, since separate ballot boxes may be provided for women, and thereby eliminate the danger that· they will fraudulently vote for officials not entitled to be elected by their ʻvotes. (*Post, pp.* 662-666.)

Acts cited and construed: Acts 1919, ch. 139.

Code cited and construed: Sec. 1266 (T.-S.).

11. **ELECTIONS. Woman suffrage. Validity. ''Qualified voters.'' Municipal election. Voting credit.**

Notwithstanding Acts 1919, chapter 139, authorizing women to vote at municipal elections, Constitution, article 2, section 29, providing that a municipality's credit should not be given or loaned except after an election by "qualified voters," etc., precludes women from voting upon such propositions, since "qualified voters" means male voters. (*Post, pp.* 666, 667.)

Acts cited and construed: Acts 1919, ch. 139.
Constitution cited and construed: Art. 2, sec. 29.

12. **ELECTIONS. Woman suffrage. Validity.**

Whether Acts 1919, chapter 139, section 3, requires women voting at municipal elections to produce poll tax receipts need not be decided, since municipalities having poll tax requirements should apply them to women whenever the legislature levies a poll tax upon females. (*Post, pp.* 668-674.)

BACHMAN, J., dissenting.

Acts cited and construed: Acts 1919, ch. 139, sec. 3.

Cases cited and approved: Gardner v. Hall, 61 N. C., 22; Kuntz v. Davidson County, 74 Tenn., 65; Brewer v. McClelland, 144 Ind., 423; Kinneen v. Wells, 144 Mass., 497-503; Lyman v. Mar-

tin, 2 Utah, 145; Attorney General v. City of Detroit, 78 Mich., 545; In re Appointment of Supervisors, 52 Fed., 261; Coggeshall v. City of Des Moines, 138 Iowa, 730.

Cases cited and distinguished: Morris v. Powell, 125 Ind., 281; Stratton Claimants v. Morris Claimants, 89 Tenn., 534; Fleming v. Memphis, 126 Tenn., 337; Malone v. Williams, 118 Tenn., 437.

Constitution cited and construed: Art. 7, sec. 4; Art. 11, sec. 8; Art. 2, sec. 28.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County.—Hon. James B. Newman, Chancellor.

Frank M. Thompson, Attorney-General, Keeble & Seay, E. N. Haston and G. T. Fitzhugh, for appellants.

John J. Vertrees, John Allison, E. J. Smith, W. E. Norvele, Jr., and W. O. Vertrees, for appellees.

Mr. Justice Green delivered the opinion of the Court.

This bill was filed by Mr. Vertrees and other citizens and taxpayers of Davidson county against the member of the State board of elections, the comptroller of the State, and election commissioners of Davidson county. It alleged that the officers named as defendants were taking steps to effectuate chapter 139 of the Acts of 1919, known as the woman's suffrage law. It was averred that the said act was unconstitutional for

various reasons stated, and it was sought to enjoin the several officials named from proceedings in the premises.

A demurrer was interposed by the defendants, which challenged the sufficiency of all the consitutional objections urged again the statute. The demurrer was overruled by the chancellor, and an injunction granted as prayed in the bill. From this decree the chancellor permitted an appeal to this court.

No question is made upon the right of the complainants to maintain this suit, if, indeed, any such question could be made.

Chapter 139 of the Acts of 1919 is set out in the margin.[1]

[1]Acts 1918.   Chapter No. 139.

An act granting women the right to vote for electors of President and Vice President of the United States, and for municipal officers, to participate and vote in certain matters and elections;   and prescribing the qualifications and conditions under which women may exercise such right of suffrage.

Section 1.   Be it enacted by the General Assembly of the State of Tennessee, that all women, citizens of the United States of and above the age of twenty-one years, having resided in the State for one year and in the county for six months preceding any election therein, and who shall be an inhabitant of the election district or precinct in which they offer to vote, shall be entitled and allowed to vote at such elections for electors of President and Vice President of the United States, and for all officers of cities, towns and taxing districts, and upon all questions or propositions submitted exclusively to a vote of the electors of such municipalities.

Sec. 2.   Be it further enacted, that where registration is required at such elections, women who are entitled to vote under the preceding section of this act shall register in the same manner as male voters, and their names shall be received and registered by the various boards of registration, at the time and in the manner required by law for other voters, and they shall be liable to all penalties attached to the violation of such law.

Sec. 3.   Be it further enacted, that where satisfactory evidence of the payment of poll taxes assessed against them for a certain period

is required to be furnished at such election by male voters, women who are entitled to vote under the preceding sections of this act in elections for electors of President and Vice President of the United States, shall likewise furnish evidence of the payment of poll taxes assessed against them, in the same manner required by law of other voters.

Sec. 4. Be it further enacted, that this act take effect from and after its passage, the public welfare requiring it.

Passed April 14, 1919.

SETH M. WALKER,
Speaker of the House of Representatives.
ANDREW L. TODD,
Speaker of the Senate.

Approved April 17, 1919.

A. H. ROBERTS, Governor.

Generally speaking, it authorizes women of lawful age to vote in elections for municipal officers and to vote for electors for President and Vice President, and to vote upon all questions or propositions submitted exclusively to a vote of the electors of any municipality. Other provisions of the act will be noted in the course of the opinion.

It is said that the legislature was without power to pass such an act under the Constitution of Tennessee, and it is further said that if such power be conceded to the legislature, it was not exercised in this instance in a constitutional manner.

We think the question of the power of the legislature to pass such a law is absolutely an open question in this State, and is not touched by any previous decision of this court.

There are certain expressions in the opinion of this court in *Ledgerwood* v. *Pitts,* 122 Tenn., 570, 125 S. W., 1036, upon which counsel for both sides have seized, as justifying their respective positions. The question for decision in *Ledgerwood* v. *Pitts* was the validity

of a compulsory primary law.  There was no occasion in that case for this court to make any declartions as to the bearing of the Constitution upon elections to any office, State or municipal.  It was only necessary for the court to decide whether any provisions of the Constitution related to the selection of party nominees for office.  Other things were *dicta,* and furnish no authority for the arguments of counsel in this case.

What are called the suffrage clauses of the Constitution of Tennessee are as follows:

Article 1, section 5: "That elections shall be free and equal, and the right of suffrage, as hereinafter declared, shall never be denied to any person entitled thereto, except upon a conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by a court of competent jurisdiction."

Article 4, section 1: "Every male person of the age of twenty-one years, being a citizen of the United States, and a resident of this State for twelve months, and of the country wherein he may offer his vote for six months, next preceding the day of election, shall be entitled to vote for members of the general assembly and other  civil officers for the county or district in which he resides; and there shall be no qualification attached to the right of suffrage, except that each voter shall give to the judges of elections where he offers to vote, satisfactory evidence that he has paid the poll tax assessed against him for such preceding period as the legislature shall prescribe, and at such time as may be prescribed by law; without which his vote cannot be received.  And all male citizens of the State shall

be subject to the payment of poll taxes and to the performance of military duty, within such ages as may be prescribed by law. The general assembly shall have power to enact laws requiring voters to vote in the election precincts in which they may reside, and laws to secure the freedom of elections and the purity of the ballot box.''

In addition of the sections above quoted, it is provided in article 3, section 2, that ''the Governor shall be chosen by the electors of the members of the general assembly at the time and places where they shall respectively vote for the members thereof.'' In article 6, section 3, it is provided that ''the Judges of the Supreme Court shall be elected by the qualified voters of the State.'' In article 6, section 4, it is provided that ''the judges of the circuit and chancery courts, and of other inferior courts shall be elected by the qualified voters of the district or circuit to which they are to be assigned.'' In article 6, section 13, it is provided that clerks of inferior courts shall be elected by the ''qualified voter'' of their county or district. In article 6, section 15, it is provided that justices of the peace or constables shall be elected by the ''qualified voters'' of their district. In article 7, section 1, it is provided that the sheriff, trustees, and register shall be elected in each county by the ''qualified voters'' thereof.

From the foregoing it is seen that the Constitution provides for the election of members of the general assembly and civil officers of the county or district by ''male persons.'' Likewise, the Governor must be elected by voters with the same qualification, that is to

say, "male persons." It is provided with respect to the other elective officers mentioned in the Constitution that they shall be chosen by "qualified voters."

It is conceded by the defendants herein that the constitutional provision with reference to the qualifications of persons who may vote for members of the general asembly and civil officers of the county or district is exclusive; that the legislature may not add to these qualifications nor subtract therefrom; and that accordingly the legislature cannot authorize any but male persons to vote in elections for these officers.

It is furthermore conceded that the phrase "qualified voters" as used in the Constitution, with respect to the election of officers therein named, means male voters. In other words, it is conceded that section 1, article 4, of the Constitution defines what "qualified voters" are, and that none but such voters can participate in the election of any officer who is required by the Constitution to be selected by "qualified voters." This, then, excludes female voters as to the election of all such officers.

The argument for the defendants is that inasmuch as no provision is made in the Constitution of Tennessee with reference to the selection of municipal officers, and with reference to the selection of electors for President and Vice President, it is competent for the legislature to provide for the selection of such officers in any manner and by any means that the legislature deems proper.

Our constitutional provisions are somewhat different from those of any other State. Most of the State Constitutions under which questions like the one before

us have arisen provided that every male citizen should be entitled to vote in all elections, or in any election. Under such constitutional provisions as these, the majority of the courts have held that the elections referred to were elections for officers mentioned in the Constitution, and that as to elections for officers not named in the Constitution, it was permissible for the legislature itself to prescribe the qualifications of voters, and therefore, when the particular question arose, permissible for the legislature to authorize women to vote in elections for such officers. *Scown* v. *Czarnecki,* 264 Ill., 305, 106 N. E., 276, L. R. A., 1915B, 247 Ann. Cas., 1915A, 772; *Hanna* v. *Young,* 84 Md., 179, 35 Atl., 674, 34 L. R. A., 55, 57 Am. St. Rep., 396; *State* v. *Hanson,* 80 Neb. 724, 115 N. W., 294; *State* v. *Dillon,* 32 Fla., 545, 14 South., 383, 22 L. R. A., 124; *Spitzer* v. *Fulton,* 172 N. Y., 285, 64 N. E., 957, 92 Am. St. Rep., 736, and other cases collected in the note Ann. Cas., 1915A, 802.

We are presented with no such problem of construction, however, under the Constitution of Tennessee. Our Constitution defines "qualified voters," and provides that certain officers shall be elected by such "qualified voters." We might with little difficulty, therefore, say that inasmuch as the Constitution has enumerated certain officers to be chosen by "qualified voters," such limitation upon the manner of the selection of officers not enumerated was impliedly excluded. But, as stated above, no problem of construction confronts us in the matter, and this is so by reason of the provisions of article 7, section 4, of our Constitution, as follows:

"The election of all officers, and the filling of all vacancies not otherwise directed or provided by this

Constitution, shall be made in such manner as the legislature shall direct.

This section of the Constitution was considered by this court in *Richardson* v. *Young,* 122 Tenn., 471, 125 S. W., 664. The same provision was contained in the Constitution of 1834. Acting under such constitutional authority, it was shown in *Richardson* v. *Young* that for many years the legislature had without question provided for the selection of officers, other than constitutional officers, in any manner that it thought best. In numerous cases the legislature had selected these officers itself. In numerous other cases it had authorized the appointment of such officers by the Governor. In several cases the legislature had delegated the power to select such officers to other officials or boards or commissions. It is not worth while to go over these things here. Since *Rishardson* v. *Young,* supra, was decided the legislature has continued the exercise of its constitutional authority to provide for the selection of officers, not mentioned in the Constitution, in various ways, and many instances may be found in the more recent statutes.

Since municipal officers are not referred to in the Constitution, and there is no provision in that instrument as to the manner of their selection, and since presidential and vice presidential electors are not referred to in' the Constitution, and no mention is made as to the manner of their selection (and this doubtless could not be regulated by the State Constitution), the conclusion inevitably follows that, under the provisions of section 4 of article 7 of the Constitution, the election of such officers "shall be made in such manner as the

legislature shall direct.'' It is thus competent for the
legislature to provide that such officers may be selected
by other instrumentalities, or the legislature itself may
select them. The legislature perhaps might confer the
power to select such officers upon the women alone.
''There is no limitation of the agencies it may employ.''
*Richardson* v. *Young*, supra. As we see it, there is ab-
solutely no restriction upon the power of the legislature
to authorize women 'to participate in the selection of
such officers. This authority of the legislature is not
only not negatived by anything in the Constitution,
but is expressly sanctioned by the language of section
4 of article 7.

Section 4, of article 7 seems too plain to permit of any
doubt as to its meaning. A like provision was contained
in the Constitution of the State of Kansas. There was
nothing in the Kansas Constitution as to how school
district officers should be chosen, although there was
a suffrage clause in the Constitution of that State
restricting the right of voting to males in all elections.
The Kansas court entertained no doubt of the authority
of the legislature under these conditions to confer upon
women the right to vote in school district elections.
*Wheeler* v. *Brady*, 15 Kan., 26.

In the Ohio Constitution there was likewise a pro-
vision similar to section 4 of article 7 of our Constitu-
tion, and there was also a constitutional provision re-
stricting the right of suffrage to males in all elections.
There was, however, still another provision in the Ohio
Constitution that any municipality might adopt a char-
ter of its own framing and exercise thereunder the
power of local self-government, subject to certain re-

strictions.   The city of East Cleveland adopted a charter conferring upon women the right to vote for all municipal elective officers, and the validity of this section of the charter having been assailed, it was sustained by the Supreme Court of Ohio as a valid exercise of the power granted to municipal corporations. *State* v. *French,* 96 Ohio St., 172, 117 N. E., 173, Ann. Cas., 1918C, 896.

Without further comment, therefore, on this branch of the case, we are satisfied that it was within the power of the legislature of Tennessee to confer on women the right to vote for electors for President and Vice President and for municipal officers.

Coming now to the objections to this particular statute, it is said to be unconstitutional for that it arbitrarily discriminates against male voters, in that it frames the election laws so as to require male voters to produce satisfactory evidence that the poll taxes assessed against them have been paid, while it exempts female voters from that obligation.

To clear up the situation we may observe that we find no restriction in the Constitution upon the power of the legislature to impose poll taxes on women.

Article 2, section 28, of the Constitution, provides that: "All male citizens of this state over the age of twenty-one years, except such persons as may be exempted by law on account of age or other infirmity, shall be liable to a poll tax not less than fifty cents, nor more than one dollar per annum."

It is contended that this constitutional expression of the class and gender on whom the poll tax shall be imposed is a restraint of the power of the legislature

141 Tenn.—42

to impose the tax on the opposite gender. That is to say, by implication the Constitution prohibits the legislature from imposing a poll tax upon women.

This argument ignores the well-settled principle that a constitutional limitation upon the power of taxation will never be inferred or implied. The right to tax is essential to the existence of government, and is peculiarly a matter for the legislature, and the legislative power in this respect can only be restrained by a distinct and positive expression in the fundamental law.

"The power of taxation being essential to government, and being usually confided in the largest measure to legislative discretion, constitutional limitations upon its exercise will not be inferred or implied, but must be distinctly and positively expressed." 37 Cyc., 727; 1 Cooley on Taxation (3d Ed.), p. 177.

See cases collected in these authorities.

This rule was clearly recognized by this court in the case of *Kuntz* v. *Davidson County*, 6 Lea (74 Tenn.), 65. In this case the defendant was a subject of the King of Prussia, although he resided in Davidson county. It was insisted that the constitutional provision rendering male citizens liable for poll tax impliedly excluded males who were not citizens. Such an idea, however, was rejected by the court, and it was held that inasmuch as there was no constitutional restriction upon the power of the legislature in this respect, it might levy a poll tax upon male inhabitants as well as upon male citizens.

With reference to the payment of poll taxes, section 3 of chapter 139 of the Acts of 1919 provides, in sub-

stance, that where satisfactory evidence of the payment of poll taxes assessed against them is required to be furnished by male voters proposing to participate in elections, like evidence of the payment of poll taxes assessed against them shall be furnished by women proposing to participate in elections.

Chapter 139 of the Acts of 1919 did not attempt to levy or assess any poll taxes against women. Perhaps such an undertaking would not have been within its scope.

Under the provisions of sections 1220 and 1221, Thompson's Shannon's Code, every qualified voter under the Constitution and laws is required to produce satisfactory evidence that he has paid the poll taxes assessed against him as a condition precedent to voting.

Under section 813a2, Thompson's Shannon's Code, every male inhabitant between the ages of twenty-one and fifty years, except persons who are deaf, dumb, blind, or incapable of labor, etc., is assessed with a poll tax.

It is urged that, since no poll tax has as yet been assessed or levied against any woman, and all men with certain exceptions are assessed with a poll tax and required to exhibit satisfactory evidence of payment thereof as a condition precedent to voting, an arbitrary and illegel discrimination is thus made between female voters and male voters, which renders the statute before us unconstitutional and void.

Chapter 139 of the Acts of 1919, in itself manifestly places no burden upon male voters, nor do we think this statute confers any immunity upon female voters. The statute expressly requires that female voters shall, in

all cases, produce satisfactory evidence of the payment of poll taxes assessed against them where a like duty is cast upon male voters.

The basis of the argument made must be referred to the omission of the legislature to pass an act assessing women with a poll tax.

The statute before us does not give to women any immunity from the payment of poll taxes, but particularly recognizes and declares their liability to such taxation when levied.

If any burden is placed upon male voters, it results from the statute, which levies a poll tax upon them.

The whole ground of the argument of illegal distinction lies in the present condition of the law, whereby men are required to pay a poll tax and women are not.

This classification of the sexes for purposes of poll taxation is made by the Constitution itself. That instrument mandatorily declares that all male citizens shall be libale to a poll tax. There is no such mandate as to women.

The Constitution of the State thus licenses the discrimination of which complaint is made, and, as a matter of course, a constitutional discrimination cannot be unconstitutional.

When the poll taxes shall have been exacted of women, then the provisions of section 1226 of Thompson's Shannon's Code, imposing a penalty upon persons voting without having complied with the poll tax requirements of sections 1220 and 1221, heretofore referred to, will apply to women equally with men, and there will be no discrimination of any sort.

The act is further assailed for that it authorizes women to vote in municipal elections upon a residence in the State for one year, and in the county for for six months, preceding the election. The charter of Nashville provides that persons qualified by the general election laws of the State may vote in that city, provided "that no person shall be qualified to vote for mayor or commissioner who shall not have been a *bona-fide* resident of such city for at least six months immediately preceding the day of such election."

.It is maintained that, by reason of the charter provision above quoted, no male can vote in a Nashville city election for mayor or commissioner unless he has been a resident of that city for six months, but that a woman otherwise qualified, who has resided in the State and county for six months, may, under the act of 1919, vote in such an election. In other words, the point is that a man must reside in Nashville for six months before he can vote for mayor and commissioner, but no such residence in the city is required of a woman.

We do not think this result follows the passage of chapter 139 of the Acts of 1919.

The charter of Nashville provides that those possessing the qualifications of voters under the general election laws shall be entitled to vote in Nashville if they have resided there for six months. Chapter 139 of the Acts of 1919 is a general election law, and gives to women the qualifications of voters for certain elections. They, like all other qualified voters, must reside in Nashville for six months in order to be entitled to vote in that city. This is necessarily true, unless it can be. said that chapter 139 of the Acts of 1919 effects in

favor of women a partial repeal of section 5 of chapter 22 of the Private Acts of 1919; the latter act being the charter of the city of Nashville.

Certainly, the former act cannot be taken as a repeal of any portion of the latter. The woman suffrage act is a general law, applicable to the whole State. The charter of Nashville is a local and special law applicable alone to that city.

It is well settled that a general law does not by implication repeal a special law, unless such legislative intent clearly appears. This rule has been expressed and applied by this court in *Burnett* v. *Maloney*, 97 Tenn., 697, 37 S. W., 689, 34 L. R. A., 541, and other cases. Many illustrations will be found in Lewis' Sutherland Statutory Construction, section 274 et seq.

Since therefore, the charter provision of Nashville is not repealed or modified by the provisions of the general statute respecting woman's suffrage, women who intend voting in Nashville must reside there six months prior to the election just as men, and there is no discrimination.

We do not think that chapter 139 of the Acts of 1919 is in conflict with section 17 of article 2 of the Constitution. It is not worth while to discuss this matter, but it is sufficient to say that after a careful consideration we are of opinion that only one general subject is expressed in the title of the statute, and the body of the statute, in our opinion, conforms to this statute.

It is again contended that the statute before us is void because it imperils the purity of the ballot box, and affords dangerous opportunities for fraud. It is

said to violate public policy and the constitutional providing for the purity of elections.

The constitutional provision respecting the purity of the ballot box is that the legislature is authorized to enact laws to secure the same.

The pith of these objections is that no separate ballot box is provided for women by the act conferring the right of suffrage upon them.  It is said that women are only entitled to vote for certain officers in a general election, to wit, for electors for President and Vice President;   that in election districts where the Dortch Law prevails they will be furnished with a ballot which contains the names of all candidates for all the offices to be filled at that election, which ballot is to be secretly marked; and that women may thus be enabled to fraudulently mark and cast ballots, illegally expressing their choice for officers in whose election they are not allowed to participate.   Likewise, in districts where the 3x7 ballot is used, women might place in the box ballots containing the names of candidates for whom they were not entitled to vote.

This would be a serious and perhaps fatal objection to the administration of this statute, if, indeed, the officers of elections were without power to provide a separate ballot box for the votes of women.   There is little in our election laws respecting the ballot box.

In section 1266, Thompson's Shannon's Code, it is said: "The ballot box is any receptacle provided by the officer or person holding an election for receiving the ballots, which box is to kept locked or otherwise well secured, until the election is finished."

From this it seems that the ballot box is to be furnished by the officer or person holding the election, and that it shall be kept locked until the election is finished.

We have in Tennessee a state board of elections, consisting of three member, who appoint election commissioners for each county in the State, and the county election commissioners appoint an election officer, judges, clerks, etc. Some of the duties of these officials are prescribed in the statute. Others are not. We suppose it to be impossible to create any office and at the same time enumerate every duty which the officer is expected to perform. In every case something must be left to implication. Some powers are necessarily inferred from others granted. Our election officers in every election have to attend to certain details which are not set out in our election laws.

It is obvious that the votes of women and the votes of men will have to be kept separate in the general elections in order to insure a fair election. It was conceded on argument by counsel for the complainants that if one ballot box was filled at any particular election before the election was over, the officer thereof might procure another ballot box in which to receive the remaining votes; this being a detail.

That is, the power to provide a box implies the power to provide boxes, when necessary to hold a full and fair election.

After the passage of chapter 139 of the Acts of 1919, a resolution was passed by both houses of the legislature in the following language:

"Whereas the present General Assembly of the State of Tennessee has passed a bill granting suffrage

to women of Tennessee in presidential and municipal elections, therefore be it resolved by the Senate, the House of Representatives concurring, that the State and county boards of election be and the same are hereby empowered and directed to make any and all provisions for the faithful execution of said act by providing separate ballot boxes or otherwise as may be required.''

Of course this resolution was not effective to confer any additional power on our election officers, or to amend any existing law. The resolution, however, can be looked to as an expression of the opinion of the legislature and as an expression of legislative advice.

The election officers get all their power from the legislature, and if the legislature had supposed that these officers lacked power to provide separate ballot boxes, the legislature would have conferred such power by statute, in order to accomplish the purposes of the suffrage act. Since the legislature, however, passed no statute, but merely adopted this resolution, we may take it as an expression of the legislative opinion that the election officers had all the power necessary, and the resolution was offered as advice from the legislature as to how the power was to be exercised.

We are not disposed to adopt a view contrary to that of a co-ordinate branch of the government about a matter of this sort. And we accept as correct the opinion of the legislature expressed as indicated, that the election officers have the power to provide separate ballot boxes, and we take it as a matter of course that the election officers will adopt the advice of the legislature and duly provide separate ballot boxes, for elec-

tions in which candidates are running for only part of whom women are entitled to vote.

We think there is no necessity for preparing different ballots for the women, and no such thing should be attempted where the Dortch Law prevails, in view of the very specific regulations of our statutes as to the form of ballots to be used. The women can simply check off the names of the presidential electors for whom they wish to vote. If the names of candidates for other officers are cross-marked on ballots placed in the women's box, such marks will be disregarded.

Where the 3x7 ballot is used, we see no objection to a special ballot for women containing only the names of the candidates for presidential electors for whom they wish to vote. If they cast ballots containing the names of candidates for other offices, such other names will be disregarded.

A separate ballot box solves the entire difficulty.

In addition to the right to vote for municipal officers and electors for President and Vice President, the suffrage act before us undertakes to confer upon women the right to vote upon all questions or propositions submitted exclusively to a vote of the electors of municipalities.

Section 29 of article 2 of the Constitution of Tennessee provides that: "The credit of no county, city, or town shall be given or loaned to or in aid of any person, company, association or corporation, except upon an election to be first held by the qualified voters of such county, city or town, and the assent of three-fourths of the votes cast at said election."

Upon the proposition, therefore, of giving or lending the credit of a city or town to or in aid of any person, company, association, or corporation, three-fourths of the "qualified voters" of such city or town who may vote must assent. Such an election is a constitutional election in the sense that none but "qualified voters" under the Constitution can participate therein. It is not seriously denied, and cannot be, under the authorities that "qualified voters," in a constitutional sense, means male voters. It follows, therefore, that, notwithstanding the provisions of chapter 139 of the Acts of 1919, women may not vote in elections upon propositions of this sort.

This refers, of course, merely to elections in which it is proposed to lend or give a credit of the city or town to some person, company, association, or corporation. We do not refer to elections upon propositions to issue municipal bonds for municipal purposes, nor to elections upon any other proposition or question, except where the matter is regulated by the Constitution adversely to the participation of women.

There is no occasion for an elision of any portion of this statute. It is only a question of the proper interpretation of the statute, and we construe the language conferring on women the right to vote upon all municipal questions or propostions to mean that they may vote on all such questions or propositions except those questions or propositions the determination of which is, by the Constitution, confided to male voters. To save the constitutionality of the statute, it is our plain duty, under familiar canons, so to restrict the scope of the general words used.

Referring again to section 3, it has been suggested that this section of the statute only intended to require of women the production of a poll tax receipt (when the tax should be assessed) as a prerequisite to voting in elections for electors for President and Vice President, and that this section did not intend to make such requirements of women in municipal elections. Whether this be a proper construction of section 3 or not, we need not decide. Since women are made municipal voters by this statute, in all municipalities where a poll tax requirement as to voters therein exists, such a requirement must be exacted of women whenever the legislature levies a poll tax upon them.    This is true for the reason heretofore stated, since the provisions of the special statutes incorporating municipalities will prevail over any language of the general law here under consideration, when the two statutes are to be applied to the affairs of a particular municipality, except in some features where the latter act was clearly intended to repeal.      ,

Chapter 139 of the Acts of 1919 was passed after long discussion and after the failure of similar acts in previous legislatures.    It embodies a policy deliberately adopted by the legislature of the State after much agitation.    All bias as to such policy must be scrupulously laid aside in the consideration of the constitutionality of the act.

The objections to this act have been presented with all the force and learning possible.    These arguments harmonize with what were doubtless the preconceived notions of many of the profession. When the matter is probed, however, nothing is to be found in the Con-

stitution which limits the power of the legislature in the premises, except in the one particular noted.

We likewise think the power has been validly exercised. It results that the decree of the chancellor is reversed, and this bill dismissed. We are of opinion, as indicated, that the act did not confer upon the women of Tennessee authority to vote upon any proposition of lending or giving municipal credit, but it does not appear that any such proposition is anywhere imminent at this time, and there is no need to retain the bill for this reason.

One-third of the costs will be paid by the defendants. Two-thirds of the costs will be paid by the complainants.

BACHMAN, J. (dissenting).

While it is clear that the legislature may, under the provisions of our Constitution, and especially by virtue of section 4 of article 7 thereof, extend the right of suffrage to women in elections for officers not contemplated by the Constitution, I am of the opinion that the suffrage act under consideration (chapter 139 of the Acts of 1919) does not present a constitutionally valid exercise of legislative authority, for the reason that it is discriminatory and violative of article 11, section 8, of the Constitution. Under our Constitution women may be lawfully subjected to the payment of poll taxes. Article 2, section 28, as pointed out, contains no positive inhibition against the power of the legislature to impose poll taxes on women, and, as applicable to the power of taxation, such limitation cannot be implied, but must be definitely and positively expressed. The reason of the right of the state to im-

pose a poll tax is because of the protection afforded by
the government to the individual. (*Gardner* v. *Hall*,
61 N. C., 22; *Kuntz* v. *Davidson County*, 6 Lea [74
Tenn.], 65), and, as stated in the latter case, the im-
position is considered to be a wise one, as constituting
a qualification for the privilege of exercising the elec-
tive franchise.

It is not to be doubted that, in order to be valid, any
attempted regulation of the right of suffrage must not
only be reasonable, but must be uniform and impartial
in its application to all classes of voters alike. Cooley's
Constitutional Limitations (7th Ed.), 907; *Morris* v.
*Powell*, 125 Ind., 281, 25 N. E., 221, 9 L. R. A., 326;
*Brewer* v. *McClelland*, 144 Ind., 423, 32 N. E., 299, 17 L.
R. A., 845; *Kinneen* v. *Wells*, 144 Mass., 497-503, 11 N.
E., 916, 59 Am. Rep., 105; *Lyman* v. *Martin*, 2 Utah,
145; *Attorney General* v. *City of Detroit*, 78 Mich., 545,
44 N. W., 388, 7 L. R. A., 99, 18 Am. St. Rep., 458;
*In re Appointment of Supervisors* (C.C.), 52 Fed., 261.

It is to be noted that the majority of the foregoing au-
thorities present the question of registration as a quali-
fication of the right to vote, but the same are particu-
larly applicable in principle to the question before us.
All citizens with reference to the exercise of the elec-
tive franchise—a privilege as distinguished from a
right—whether qualified under constitutional provision,
or legislative grant, should stand equal before the law,
and the conferring of equal privinleges which all in
the same class should possess imposes equal burdens
and obligations which all should be made to assume.
As stated in *Morris* v. *Powell*, supra: "One
class of voters cannot be required to possess qualifi

cations which are not required of all others.'' One voter must possess the same qualifications as another. He need possess no more.

''Indeed, it is true, if a State of the American Union prescribes for a portion of its citizens otherwise entitled to vote, prerequisites for voting from which other citizens are relieved, to that extent the State ceases to maintain a republican form of government. . . .'' *In re Appointment of Supervisors*, supra.

Section 8 of article 11 of the Constitution provides, in substance, that the legislature shall have no power to pass any law granting to individuals any rights, privileges, immunities, or exemptons, other than such as may be by the same law extended to any member of the community who shall be able to bring himself within the provisions of such law. I am clearly of the opinion that section 3 of the act under consideration is violative of the above provision. In so far as the same applies to municipal elections, or the voting upon propostions submitted to a vote of the electors of municipalities, women are authorized to vote without any requirement as to the payment of poll taxes, or the furnishing of evidence of the payment of same; while, as a prerequisite to the same right to vote in the same elections with women, men are required to pay and furnish evidence of the payment of poll taxes. Thus an inequality repug nant to the mandates of our organic law is created by the statute, an immunity directly prohibited is conferred,, and a forbidden exemption is sought to be authorized.

While section 3 of the act provides that in elections for electors for President and Vice President women

shall furnish evidence of the payment of poll taxes assessed against them in the same manner required by law of other voters, this cannot be held to obviate the unlawful discrimination prohibited, for the reason that, while the legislature may require women to pay poll taxes, it has not yet done so, and the requirement in the future of a qualification not warranted by any existing law is a nullity, and imposes no obligation. In other words, the legislature cannot by indirection constitutionally do that which it may not do directly. To require that evidence of the payment of poll taxes as a right to vote be furnished by women, when none can be lawfully collected, is a vain and idle requirement. It is not that the legislature has failed to impose poll taxes on women which renders the act obnoxious to the Constitution; but that the act, as passed, is discriminatory, in that for the exercise of the same right one class is relieved from burdens mandatorily required of another. The fact that some men, because of age or other infirmity, are permitted to vote without the payment of poll taxes, cannot be made the basis for argument that it is no discrimination for women to vote without making such payment and exhibiting evidence thereof, for the reason that such exemption is expressly made by the Constitution and cannot be complained of. Women, as a class, are subject to the assessment and payment of poll taxes, and upon their being assessed therefor the constitutional exemptions would apply to individual cases the same as to men. Further than this, they can claim as a class no constitutional immunity. I am unable to see wherein the attempted classification is not purely arbitrary and wholly lacking in that rea-

sonableness necessary to maintain it as a constitutional enactment.

"If the classification is made under article 11, section 8, of the Constitution, for the purpose of conferring upon a class the benefit of some special right, . . . immunity, or exemption, there must be some good and valid reason why that particular class should alone be the recipient of the benefit. *Stratton Claimants* v. *Morris Claimants,* 89 Tenn., 534, 15 S. W., 95, 12 L. R. A., 70.

And, as stated by the present Chief Justice in *Fleming* v. *Memphis,* 126 Tenn., 337, 148 S. W., 1058, 42 L. R. A. (N. S.), 493, Ann. Cas., 1913D, 1306:

"But this classification must not be mere arbitrary selection. It must have some basis which bears a natural and reasonable relation to the objects sought by the legislation. . . . ."

So in *Malone* v. *Williams,* 118 Tenn., 437, 103 S. W., 810, 121· Am. St. Rep., 1002, in passing upon discriminatory legislation with reference to elections in the city of Memphis, Judge Neil says:

"No good reason can be conceived why the city of Memphis should be elevated above the other communities covered by the act, or depressed below those communities, as the case may be, and placed in a class by itself, whereby, in the use of the elective franchise, it is relieved of the burdens imposed upon other communities by the provisions of the act referred to, and of those acts which the latter act amends, or why its people should be deprived of the safeguards vouchsafed to other communities by the said act of 1897, and its congeners."

141 Tenn.—43

The difference in sex, or the fact that only limited suffrage is granted by the act, cannot be made the basis of classification. The case of *Coggeshall* v. *City of Des Moines*, 138 Iowa, 730, 117 N. W., 309, 128 Am. St. Rep., 221, cited in support of the reasonableness of the classification attempted to be made by the act of 1919, is not applicable. The right there conferred upon women was limited to participation in the determination of questions of municipal indebtedness, and, as pointed out, when exercised was advisory only. Here is granted the right to equally participate in many elections, choosing most important State and municipal officials, in whose selection the votes of all are of equal weight and effect, and finally and definitely determine incumbency to office. Section 8 of article 11 of the Constitution recognizes no degrees of immunities or exemptions. That women cannot participate in all elections is because of the inhibitions of the Constitution. In those elections where they may vote, their rights, qualifications, and privileges should be the same as other voters; no more, no less.