NOLICHUCKEY SAND CO., INC.,
Plaintiff–Appellant,

v.

Joe HUDDLESTON, Commissioner of Revenue, State of Tennessee, and Greene County, Tennessee, Defendants–Appellees.

Court of Appeals of Tennessee,
Eastern Section.

Nov. 29, 1994.

Application for Permission to Appeal
Denied by Supreme Court
April 3, 1995.

E.C. Heininger, Greeneville, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Charles L. Lewis, Deputy Atty. Gen., Sean P. Scally, Asst. Atty. Gen., Nashville, for appellee Joe Huddleston, Commissioner of Revenue.

## OPINION

SUSANO, Judge.

In this case, Nolichuckey Sand Co., Inc. (Nolichuckey), appeals and argues that the county option mineral severance tax (severance tax) codified at T.C.A. § 67–7–201, et seq., is constitutionally infirm in toto. After initially agreeing with the Appellant, the Chancellor reconsidered his decision and held that the doctrine of elision could be applied to salvage the basic provisions of the tax. The Chancellor proceeded to carve out and strike down the population-based exclusions found at T.C.A. § 67–7–211 and the tax refund and rebate provisions (including more population-based exclusions) of T.C.A. § 67–7–221 as violative of Article 1, Section 8, and Article 11, Section 8, of the Tennessee Constitution, while maintaining intact the option of counties in this state to impose a mineral severance tax under the remaining provisions of T.C.A. § 67–7–201, et seq. We are asked to decide if the doctrine of elision can be applied to save this local option tax. We believe it can, and accordingly affirm the Chancellor's Judgment.

I

Basically, four issues are raised for our consideration:

1. Does a tax statute (T.C.A. § 67–7–221) which exempts Tennessee counties falling within seventy-three population brackets amount to an impermissible suspension of a general law in violation of the Tennessee Constitution since, it is argued, a statute which exempts over 70% of Tennessee counties from its aegis cannot be considered a general law? (Appellee's Issue).

2. Did the Chancellor err in upholding the constitutionality of the basic provisions of the severance tax by eliding the population exclusion classifications found at T.C.A. § 67–7–211 after he had struck down T.C.A. § 67–7–221 (the refund and rebate provision) in its entirety?

a. Did the Chancellor err in basing his elision of the population exclusions of T.C.A. § 67–7–211 on a severability clause found in Section 12, Chapter 953 of the Public Acts of 1984 in view of *Menefee Crushed Stone Co. v. Taylor,* 760 S.W.2d 223 (Tenn.App.1988), which states that "Chapter 953, Public Acts of 1984, was an unconstitutional delegation of legislative authority" and "null and void"?

b. Is elision of T.C.A. § 67–7–211 authorized by T.C.A. § 1–3–110?

3. Did the Chancellor err in altering his Memorandum of September 20, 1993, in which he granted full summary judgment to Nolichuckey, ordered a refund of all taxes paid by it, awarded attorneys' fees to Nolichuckey, and struck down the severance tax in its entirety?

4. In view of Chapter 553 of the Public Acts of 1994 which deleted T.C.A. §§ 67–7–211 and 67–7–221, is Nolichuckey entitled to a refund of all taxes paid on mineral sales made prior to March 1, 1994, the effective date of that Act, together with an award of attorneys' fees under T.C.A. § 67–1–1803(d) and interest under T.C.A. §§ 67–1–1803(b) and (d)?

## II

Nolichuckey is a Tennessee corporation engaged in the processing and converting of rock into a material used for road and highway surfaces. It sells its product throughout East Tennessee and portions of Virginia and North Carolina, and the majority of its sales are to contractors who purchase the product to fulfill contracts with the federal government and state and local governments.

On November 18, 1991, Greene County levied a mineral severance tax in the amount of $.15 per ton pursuant to the authority of T.C.A. §§ 67–7–201, et seq. The levy became effective February 1, 1992, and Nolichuckey has since paid approximately $60,000 in mineral severance taxes to the Commissioner of Revenue.

The somewhat twisted history of the severance tax began with the passage of Chapter 953 of the Public Acts of 1984 (C. 953, P.A. 1984). That Act specified, in pertinent part, as follows:

> SECTION 1. Any county legislative body, by resolution is authorized to levy a tax on all sand, gravel, sandstone, chert and limestone severed from the ground within its jurisdiction. The tax shall be levied for the use and benefit of the county only, to be allocated and applied to its county road fund, and all revenues collected from the tax except deductions for administration and collection provided for herein, shall be allocated to the county.

> Administration and collection of this tax shall be by the State Department of Revenue who shall have the power to promulgate all rules and regulations necessary and reasonable for the administration of the provisions of this act.

> SECTION 2. The rate of the tax shall be set by the county legislative body, but shall not exceed fifteen cents ($.15) per ton of sand, gravel, sandstone, chert or limestone severed from the ground in the county. Every interested owner shall become liable at the time the sand, gravel, sandstone, chert or limestone is severed from the earth and ready for sale. The tax shall be payable at the time of sale and delivery.

> \* \* \* \* \* \*

SECTION 8. This act shall not become effective for the imposition of a tax within any county in this state unless it is approved by a two-thirds (⅔) vote of the county legislative body. **Such county legislative body shall approve or disapprove this act within one hundred twenty (120) days of the effective date of this act for ratification purposes.** (Emphasis Added).

\* \* \* \* \* \*

SECTION 10. The provisions of this act shall not apply in counties having a population of:

| not less than | nor more than |
|---|---|
| 31,200 | 31,300 |
| 28,750 | 28,800 |

according to the 1980 Federal Census of Population or any subsequent federal census.

SECTION 11. The provisions of this act shall not apply in counties having a population of:

| not less than | nor more than |
|---|---|
| 84,000 | 84,100 |
| 16,360 | 16,450 |
| 19,500 | 19,575 |

according to the 1980 Federal Census of Population or any subsequent federal census.

SECTION 12. If any provision of this act or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to that end the provisions of this act are declared to be severable.

The General Assembly passed C. 953, P.A. 1984 on May 24, 1984, and it was signed into law on June 5, 1984. It was codified at T.C.A. §§ 67–7–201 through 67–7–211. The net result of C. 953, P.A.1984 was to give ninety of ninety-five Tennessee counties the option of enacting a mineral severance tax, not to exceed 15¢ per ton.

A second Public Act dealing with the severance tax, Chapter 963 of the Public Acts of 1984 (C. 963, P.A.1984), was passed by the same General Assembly and also signed into

law on June 5, 1984. C. 963, P.A.1984 provided in pertinent part that

SECTION 1. Notwithstanding any other provision of law to the contrary, whether by Public or Private Act, any governmental entity which levies and collects a tax on certain minerals severed in that jurisdiction shall refund or rebate such tax to the governmental entity purchasing said minerals, upon proper application by the governmental entity if:

(1) such minerals are sold directly to a governmental entity; or

(2) such minerals are sold to a private contractor who purchases such minerals under a contract with a governmental entity which requires the use of such minerals for completion of such contract.

Additional sections of C. 963, P.A.1984 contained a total of 83[1] population brackets exempting counties from the refund and rebate provisions. C. 963, P.A.1984 in its entirety was codified at T.C.A. § 67–6–221. Greene County was among the counties exempted from the provisions of T.C.A. § 67–6–221.

At the request of the Commissioner of Revenue, the Tennessee Attorney General examined the constitutionality of C. 953, P.A. 1984, the basic severance tax, and found it wanting. In an Opinion dated October 1, 1984, the Attorney General stated that "[i]t is the opinion of this Office that the constitutionality of Chap. 953 is questionable because the Act derives its efficacy from approval by county legislative bodies." 84 Op. Att'y Gen. 277 (1984). In a second opinion issued on March 13, 1985, the Attorney General responded to a second inquiry by the Commissioner, who this time asked whether C. 953, P.A.1984 could be judicially modified so as to render it constitutional. In response, the Attorney General stated that "[t]he provisions of Chap. 953 resulting in the unconstitutional delegation of legislative power [to county legislative bodies] cannot be elided so as to save the remainder of the Act." 85 Op. Att'y Gen. 077 (1985). The Attorney General reasoned that "[i]f no county legislative body approved [C. 953, P.A.1984] within the 120

day period, the legislative enactment would never go into effect." *Id.* He concluded that "the law was not complete when it left the legislature," because, contrary to the attempted empowerment of the counties to determine if the act ever came into existence, "only the legislature can say what the law will be." *Id.*

Because of the defective enactment of C. 953, P.A.1984, the Commissioner ceased to collect the severance tax during the months of March, April, and May of 1985.

Responding to the Attorney General's opinions, and prior to any judicial interpretation of C. 953, P.A.1984, the General Assembly passed and the Governor signed into law, all in May, 1985, Chapter 410 of the Public Acts of 1985 (C. 410, P.A.1985) in an obvious attempt to correct the constitutionally suspect C. 953, P.A.1984. The new enactment deleted and severed T.C.A. § 67–7–210 (the section found to be unconstitutional by the Attorney General) and in place of the severed provision added a new provision to the severance tax without the "120 day period" provision which new provision was subsequently codified as T.C.A. § 67–7–212 providing, in pertinent part, that

(a) The tax authorized by this part shall be levied pursuant to the provisions of this part in any county upon the adoption of a resolution by two-thirds (⅔) vote of the county legislative body of such county. The presiding officer of the county legislative body shall certify a copy of the resolution to the secretary of state and the commissioner of the department of revenue.

(b) In addition, no tax shall be collected by the department of revenue pursuant to such county legislative action until the first day of a month occurring at least thirty (30) days after the receipt of a certified copy of such action by the department.

(c) Any county legislative body that has by private act enacted prior to June 5, 1984, levied a tax on the severance of [minerals] may continue such tax ..., and such private act shall remain in force and effect in such county for all other purposes; ...

---

1. Some of the brackets overlap, e.g., 6825–6875 and 6850–6880, while some are in the Act twice,

e.g., 8650–8750 and 30,000–30,100. As codified, there are 73 brackets.

Finally, C. 410, P.A.1985 "reenacted" the provisions of T.C.A. §§ 67–7–201 through 67–7–211 "excluding section 67–7–210"; and provided that the "provisions of Sections 2 through 5 of this Act [C. 410, P.A.1985] **shall be retroactive to June 5, 1984, so as to authorize levy of the tax herein from that date,** the public welfare requiring it." (Emphasis added). Unlike C. 953, P.A.1984, C. 410, P.A.1985 did not contain a severability clause.

In 1988, this Court heard an appeal by a company that had paid the severance tax under protest. Menefee Crushed Stone Co. filed suit against the Commissioner of Revenue to contest the retroactive provisions of C. 410, P.A.1985. In *Menefee Crushed Stone Co. v. Taylor,* the Middle Section of this Court, agreeing with the Attorney General, struck down C. 953, P.A.1984, **in its entirety,** as an unconstitutional delegation of power by the General Assembly, holding that "[t]he power to make laws is conferred upon the legislative branch of government and that power 'cannot be delegated by that department to any other body or authority.'" 760 S.W.2d 223, 227 (Tenn.App.1988). The Court reasoned that "[i]f no county approved Chapter 953 by a two-thirds vote of the county legislative body within a 120–day period, Chapter 953 would never go into effect." *Id.* at 227. Since the legislature is the only body under the Constitution that can legislate, the *Menefee* Court held that the legislature in enacting C. 953, P.A.1984 with a provision that left it up to the counties as to whether the law **ever can go into effect** had acted contrary to the Tennessee Constitution.

The *Menefee* Court also addressed the constitutionality of C. 410, P.A.1985's retroactive provisions. It reasoned that because Art. 1, § 20 of the Tennessee Constitution provides "[t]hat no retrospective law, ... shall be made," the new enactment had to be "a completely new act and could not retroactively tax transactions which had already been performed prior to its effective date, July 8, 1985, ..." *Id.* at 227. The Court held that "[s]ince § 8 of Chapter 410 lacks the consti-

tutionally required wording for setting an extraordinary effective date, ... Sections 2 through 5 cannot take effect prior to the effective date of the act." *Id.* at 226. The court determined that the effective date of the act was July 8, 1985. Therefore, the net result of *Menefee* was that C. 953, P.A.1984 was declared to be unconstitutional *in its entirety;* the retroactive provisions (Sections 6 and 8) of C. 410, P.A.1985 were likewise unconstitutional; and the rest of the severance tax *as reenacted in C. 410, P.A.1985* was constitutional and became effective as of July 8, 1985. The *Menefee* Court was not asked to and did not address the validity and effect of the population exclusion provisions of T.C.A. § 67–7–211 or T.C.A. § 67–7–221.

The number of Tennessee counties excluded by the five population brackets in the severance tax has steadily dwindled as the General Assembly has taken subsequent action. Chapter 156 of the Public Acts of 1991 deleted the 19,500–19,575 and the 28,750–28,800 brackets. Chapter 468 of the Public Acts of 1993 deleted the 84,000–84,100 bracket. Finally, Chapter 553 of the Public Acts of 1994, effective March 1, 1994, completely deleted T.C.A. § 67–7–211 and the two remaining population exclusion brackets.[2]

### III

Nolichuckey filed suit in August, 1992, seeking a refund of the severance taxes paid by it, plus interest; a declaration that the population classifications contained in §§ 67–7–211 and 67–7–221 are "irrational, arbitrary and capricious" and thus violative of its rights under the Fourteenth Amendment to the U.S. Constitution and Article 1 § 8 and Article 11 § 8 of the Tennessee Constitution; and a declaration that the November 18, 1991, resolution of the Greene County legislative body levying the tax "is invalid and contrary to law." Nolichuckey sued Greene County because of its imposition of the severance tax and the Commissioner of Revenue for collecting the tax.

Nolichuckey moved for summary judgment, asserting that the severance tax was

---

**2.** The last two brackets excluded counties with populations of between 16,360–16,450 and 31,- 200–31,300.

"inequitable" and that it "discriminated between counties" as a result of the population bracket exclusions. In support of its Motion for Summary Judgment, Nolichuckey presented an affidavit from its president stating that the severance tax put the company at a competitive disadvantage and an affidavit from the corporate bookkeeper stating the amount of rock sold and severance tax paid. Nolichuckey also introduced an affidavit from a professor of economics who concluded that the severance tax is inequitable; that there is "no easily discernible relationship" between the population brackets and county population, income, or mining activity; and that Nolichuckey cannot offset the tax by shifting costs forward to consumers due to the competitive nature of the crushed silicate rock market in East Tennessee.

The Commissioner filed a Cross–Motion for Summary Judgment, arguing that "the ... severance tax, and all aspects of it" are constitutional and that any provision found unconstitutional should be elided. Both parties agree that there are no genuine issues of material fact remaining.

In his initial Memorandum of September 20, 1993, the Chancellor stated that he had searched for "some rational basis" for the population bracket exclusions found in the severance tax, "but frankly nothing comes to mind." The Chancellor opined that

> To state it succinctly, requiring this plaintiff to pay a severance tax merely because it does business in a particular county, and at the same time allowing an identical business to escape that tax because it fortuitously does business in a county not subject to the tax, is simply unfair and puts plaintiff at a clear economic disadvantage. It is, therefore, a denial of equal protection.

He concluded that the severance tax was unconstitutional, and for the same reasons held the rebate and refund provision to be unconstitutional as well.[3] He further held

Greene County's implementing legislation "invalid and void," and awarded Nolichuckey a tax refund, plus statutory interest thereon and attorneys' fees. The Chancellor's Final Judgment, entered November 2, 1993, mirrored his conclusions of law.

The Commissioner filed a Motion to Alter or Amend Judgment. He asserted that the Chancellor should reconsider his original decision because "the use of the doctrine of elision in this case would be both in keeping with the intent of the Legislature in enacting the mineral severance tax law and the proper method of construction of the statute pursuant to the interpretive authority granted this Court at Tenn.Code Ann. § 1–3–110." The Commissioner further argued that the Chancellor's decision to strike down the entire severance tax "contravenes the clear intent of the General Assembly to adopt a local option mineral severance tax law," and that a decision merely to elide the unconstitutional population bracket exclusions of the severance tax would "certainly [be] less intrusive and more restrictive than invalidation of the entire mineral severance tax law." Nolichuckey filed a motion in opposition, stressing that "[t]he doctrine of elision is not favored," and that "[t]his court should not extend the severance tax to counties which the General Assembly has expressly determined should not be included."

The Chancellor issued a revised Memorandum on January 14, 1993, in which he reversed his original position and found that

> [c]learly, it is possible to give effect to the taxing statute even if the unconstitutional population classifications are removed. To remove the population classifications only means that the statute will apply statewide, rather than in only a very few counties, thus insuring that all entities subject to the tax are competing on an equal basis.

He went on to conclude that C. 410, P.A.1985 merely amended C. 953, P.A.1984, rather

---

3. The Chancellor stated in his Memorandum of September 20, 1993, that he would not elide the numerous exclusions in the rebate and refund statute, since to do so "would be such a drastic change in the statute that this Court cannot presume the legislature would be agreeable to enacting it in that form." He further noted that it was

"tempting" to elide the few exclusions found in the severance tax itself, but concluded that the severance tax and the rebate and refund statute were so intertwined that judicial intervention would "usurp the prerogative of the legislature by re-writing the taxing statute."

than wholly replacing it, and that therefore C. 953, P.A.1984's severability clause "still exists." He therefore elided the few population bracket exclusions from T.C.A. § 67-7-211 and upheld the remainder of the tax, while reiterating that the refund and rebate statute could not be repaired via elision and thus remained unconstitutional. The Chancellor's revised Final Judgment, entered on February 22, 1994, modified the previous Judgment as indicated above, upheld the implementing resolution of the Greene County Commission, and denied Nolichuckey a tax refund and attorneys' fees.

## IV

We begin our analysis with the observation that while an appellate court must presume that a trial court's **findings of fact** are correct, unless the evidence preponderates otherwise, no such presumption exists for a trial court's **conclusions of law.** Tenn.R.App.P. 13(d). In this appeal, there are no disputed facts remaining so we are only faced with a question of law.

The first issue addressed by us is one posed by the Commissioner. He argues that the trial court erred in striking down the rebate and refund statute, T.C.A. § 67-7-221. The Commissioner contends that, given the numerous population-based exclusions, there is, in effect, no general rebate and refund law in Tennessee, and that therefore the constitutional prohibition against exceptions to general laws is not implicated in this case.

■■■ We note that " 'the Legislature of Tennessee, like the legislature of all other sovereign states, can do all things not prohibited by the Constitution of this State or of the United States.' " *Perry v. Lawrence County Election Commission,* 411 S.W.2d 538, 539 (Tenn.1967) (quoting *Bell v. Bank of Nashville,* 7 Tenn. 269 (1823)). Therefore, courts must uphold legislation except where it directly impinges on the state or federal constitutions, which are the supreme law of the land. *See* U.S. Const. art. 6, § 2. "In construing statutes, it is our duty to adopt a construction which will sustain a statute and avoid constitutional conflict if any reasonable construction exists that satisfies the require-

ments of the Constitution." *Davis–Kidd Booksellers, Inc. v. McWherter,* 866 S.W.2d 520, 529 (Tenn.1993); *see also Memphis Publishing Co. v. City of Memphis,* 513 S.W.2d 511 (Tenn.1974); *State v. Sliger,* 846 S.W.2d 262 (Tenn.1993). Moreover, "[t]he right to tax is essential to the existence of government, and is peculiarly a matter for the Legislature, and the legislative power in this respect can only be restrained by a distinct and positive expression in the fundamental law." *Vertrees v. State Board of Elections,* 141 Tenn. 645, 214 S.W. 737, 740 (1919). As a plaintiff seeking to challenge the constitutionality of these Tennessee revenue statutes, Nolichuckey bears a heavy burden.

■■■ Nolichuckey alleges that both the rebate and refund statute and the severance tax itself directly conflict with the following provisions of the Tennessee Constitution:

> Art. 1, § 8. That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.

> Art. 11, § 8. The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunities, or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within in the provisions of such law.

The gravamen of Nolichuckey's complaint is that the population exclusion brackets contained within these revenue statutes violate these constitutional prohibitions against deprivation of property except by laws, which must be general in their application. Our Supreme Court has held that legislation containing particular classifications (such as population brackets) will not be struck down "[i]f any possible reason can be conceived to justify the classification, or if the reasonableness be fairly debatable, ..." *Estrin v. Moss,* 221

Tenn. 657, 430 S.W.2d 345, 349 (Tenn.1968). Nevertheless, even population bracket exclusions may be struck down "[u]nless the act **relates to a matter in respect of which a difference in population would furnish a rational basis** for diversity of laws, ..." *Leech v. Wayne County,* 588 S.W.2d 270, 280 (Tenn.1979) (Henry, J., dissenting) (Emphasis in original).

▉ The question, then, is whether any reasonable basis exists for the population exclusion brackets contained in the severance tax and the rebate and refund statute. Taking the latter statute first, we have carefully pondered its myriad population exclusion brackets and tried to discern some underlying rationale for them, but we agree with the Chancellor that "frankly nothing comes to mind." According to the 1980 federal census, T.C.A. 67–7–221's 73 population brackets exclude Tennessee's least populous county—Pickett County—but not the state's next to smallest—Moore County. Likewise, the brackets exclude Tennessee's second, third and fourth most populous counties—Davidson, Knox and Hamilton, respectively—but not the state's largest—Shelby County. Under the 1990 federal census, moreover, Pickett County has grown out of its bracket (but remains exempt), while Moore County has grown into a bracket and is newly exempt. Likewise, both Davidson and Knox Counties have grown out of their exclusion brackets (but remain exempt), while Hamilton has shrunk out of its bracket. We note that even the Commissioner agrees in his brief that the rebate and refund statute exclusions constitute "a crazy-quilt of exclusions without any unifying or discernible basis." However, the Commissioner argues that T.C.A. 67–7–221 should be upheld because it contains so many exclusions that there is in fact no general law in Tennessee concerning rebate and refund of mineral severance tax revenues. This creative argument fails because Article 11, § 8 not only prohibits the suspension of "any general law," but also forbids passage of "any law granting to any individual or individuals, rights, privileges, immunities, or exemptions other than such as may be, by the same law extended to any member of the community...." We believe that the rebate and refund provision likewise violates the equal protection provision of Article 1, § 8 of the Tennessee Constitution by potentially subsidizing residents of some Tennessee counties (by allowing the counties, if they pass a local mineral severance tax, to retain all revenues collected) at the expense of those in other counties (which may be compelled to rebate or refund some portion of such revenues). Our state government was created to benefit all Tennesseeans, not to preside over a hodge-podge of statutory exclusions having the very real effect of redistributing revenue monies among the counties for no rational reason.

▉ We believe that the Chancellor correctly decided that he should not elide the 73 population exclusion brackets in an attempt to uphold the rebate and refund statute. The doctrine of elision allows a court to strike out an unconstitutional portion of a statute and to find the remaining provisions to be constitutional. *Lowe's Companies, Inc. v. Cardwell,* 813 S.W.2d 428 (Tenn.1991). Our Supreme Court has stated that

> The doctrine of elision is not favored. *Smith v. City of Pigeon Forge, Tenn.,* 600 S.W.2d 231 (1980). The rule of elision applies 'if it is made to appear from the face of the statute that the legislature would have enacted it with the objectionable features omitted, and those portions of the statute which are not objectionable will be held valid and enforceable, ... provided, of course, there is left enough of the act for a complete law capable of enforcement and fairly answering the object of its passage.' *Davidson County v. Elrod,* 191 Tenn. 109, 232 S.W.2d 1 (1950). 'However a conclusion by the court that the legislature would have enacted the act in question with the objectionable features omitted ought not to be reached unless such conclusion is made fairly clear of doubt from the face of the statute. Otherwise, its decree may be judicial legislation.' *Davidson County v. Elrod, supra.*
>
> The inclusion of a severability clause in the statute has been held by this Court to evidence an intent on the part of the legislature to have the valid parts of the statute in force if some other portion of the statute has been declared unconstitutional. *Cat-*

*lett v. State,* 207 Tenn. 1, 336 S.W.2d 8 (1960).

*Gibson County Special School Dist. v. Palmer,* 691 S.W.2d 544, 551 (Tenn.1985). We do not believe that the doctrine of elision should be applied in this case to save a statute which, as passed by the General Assembly, did not apply to the vast majority of the counties in this state. In our opinion, the General Assembly would not have passed the refund and rebate statute if it had been introduced without the numerous population exclusion brackets. Not only did the exclusions include the vast majority of the counties, they also included, within their reach, the vast majority of the citizens of this state. Because we do not believe the General Assembly would have passed the statute without the exclusions, and because neither the refund and rebate statute nor the act which brought it into law (C. 963, P.A.1984) contains a severability clause, we conclude that the Chancellor acted correctly in striking down T.C.A. § 67–7–221 as violative of the Tennessee Constitution.[4]

We next address Nolichuckey's main issue, that the Chancellor erred by eliding the population exclusion brackets of the severance tax, based on the severability clause originally found in C. 953, P.A.1984 or on the Code's generic severability clause found at T.C.A. § 1–3–110. We again review the population exclusion brackets with the thought in mind that such brackets must have a rational basis to be constitutional, *see Estrin* and *State v. Trotter,* 153 Tenn. 30, 281 S.W. 925 (1926), or else must be of such modest importance that the legislature would certainly have passed the Act without them. *See Gibson County* at 551–52.

Sections 10 and 11 of C. 953, P.A.1984, as originally codified at T.C.A. § 67–7–211, contained a total of five population exclusion brackets. The five brackets excluded a total of only five Tennessee counties (based on 1980 census figures)—Unicoi, White, Cocke, Jefferson, and Rutherford Counties—from the severance tax. We know of no common

trait linking these counties which serves as a rationale for the exclusions, and note that Nolichuckey's economic expert found no common industrial or income-related tie between the five counties. This impression of arbitrariness is strengthened by the fact that Loudon County grew into one of the exclusion brackets as of the 1990 census, while all five counties formerly within the brackets grew out of them as of 1990 (but remained exempt). The fact that additional exclusions from the severance tax in the future will be subject to the vagaries of demographics underscores the arbitrary nature of the exclusion brackets. The use of population brackets to exclude one or more counties from the operation of a general law must have some rational basis. *See State v. Trotter* 281 S.W. at 926–27. Because no rational basis is evident for the population exclusion brackets found at § 67–7–211, we hold that these brackets violate art. 1 § 8 and art. 11 § 8 of the Tennessee Constitution.

The next question is whether the entire severance tax must fail due to the unconstitutionality of T.C.A. § 67–7–211. In this context, it is important to note that C. 953, P.A.1984 contained a severability clause, and that the General Assembly gradually whittled away at the five population exclusion brackets throughout the early 1990s and finally deleted T.C.A. 67–7–211 in its entirety earlier this year. *See* Chapter 553 of the Public Acts of 1994 (C. 553, P.A.1994). It is "tempting," as the Chancellor put it in his initial opinion, to hold that Section 5 of C. 410, P.A.1985 effectively resurrected C. 953, P.A.1984's severability clause, and to use that clause as the basis for eliding the population exclusion brackets. We do not believe that the *Menefee* decision, which struck down C. 953, P.A.1984's as "null and void" and also held that that Act never came into effect, leaves us that option. *Menefee* at 227. Moreover, the *Menefee* Court also deemed C. 410, P.A.1985 to be "a completely new act," though this language may be dicta. *Id.*

**4.** We note that the General Assembly has subsequently made its intent clear by passing C. 553, P.A.1994, which deletes T.C.A. § 67–7–221 in its entirety. While the issue of the current effect of this statute is now moot, we have considered its

constitutionality during the time the severance taxes at issue in this case were paid by Nolichuckey as that statute affected the constitutionality of the tax itself.

It seems to us that the legislature has made its support for a mineral severance tax abundantly clear. It included a severability clause in C. 953, P.A.1984. When that Act's constitutionality was questioned by the Attorney General, the legislature saw fit to pass C. 410, P.A.1985, deleting the questionable provision delegating its legislative power to the counties while reenacting the key provisions of a mineral severance tax. That the legislature omitted a severability clause in C. 410, P.A.1985 is not determinative, because it has tenaciously sought to preserve a mineral severance tax by first whittling away at the population exclusion brackets of T.C.A. § 67–7–211 and then totally deleting them via C. 553, P.A.1994. We believe it is clear that the legislature would have passed the severance tax without the few exclusions formerly found at T.C.A. § 67–7–211. Elision of those former exclusions is thus appropriate and we hold that, while the population exclusion brackets formerly found at T.C.A. § 67–7–211 are unconstitutional, it is clearly the legislature's will that the remainder of the severance tax found at T.C.A. § 67–7–201, *et seq.*, be preserved, and we therefore uphold it.

A long line of Tennessee Supreme Court decisions support our conclusion that elision is appropriate under the circumstances of the case at bar, even without a severability clause in C. 410, P.A.1985. In *Taylor Theater v. Town of Mountain City*, for example, the Court found that a public act's single population bracket excluding only Johnson County from a statute giving all other counties the option to prohibit the operation of movie theaters on Sundays for private gain violated Article 11, § 8 of the Tennessee Constitution. 227 S.W.2d 30 (Tenn.1950). The *Taylor Theater* Court did not strike down the entire Sunday closing act, however, but only the provision excluding Johnson County. *Id.* In *Knoxville's Community Development Corp. v. Knox County*, the Court addressed the constitutionality of a public act with a single population bracket exempting only Hamilton and Knox counties from an otherwise statewide tax-increment financing scheme. 665 S.W.2d 704 (Tenn.1984). The Court again struck down the offending exemption, but left the underlying statutes[5] intact, despite the fact that neither the statutes nor the public act creating them contained a severability clause. *Id.* at 705; *see also* Chapter 906 of the Public Acts of 1982. Likewise, in *Pirtle v. City of Jackson,* the Court examined the constitutionality of a public act with two population brackets exempting only Davidson, Madison and Shelby Counties from two otherwise statewide applicable statutes[6] providing for municipal annexation by ordinance but requiring municipalities to prove that their annexation ordinances were "reasonable for the overall well-being of the communities involved." 560 S.W.2d 400, 401 (Tenn.1977). The Court struck down the two population exclusion brackets as lacking any rational basis, but left the remainder of the two statutes intact, without ever mentioning the severability clause found at § 7 of the Public Act[7] which added the two population exclusions to the statutes. *Id.* at 402. If, therefore, the Supreme Court has elided unconstitutional population brackets excluding one, two, and three counties from a statute's otherwise statewide application without invoking any severability clause, we believe that eliding the few population brackets of T.C.A. § 67–7–211 is appropriate under the circumstances of this case.

For the foregoing reasons, we believe that the five population exclusion brackets found at T.C.A. § 67–7–211 are unconstitutional, but conclude that the brackets can be elided. The remainder of the severance tax, T.C.A. § 67–7–201, *et seq.*, is therefore constitutional.

Nolichuckey poses a sub-issue as to whether elision would be appropriate under T.C.A. § 1–3–110 or not. Having decided that the severance tax remains constitutional on the basis of the legislature's clear intent and judicial precedent, we do not reach the issue of whether elision would be appropriate under T.C.A. § 1–3–110, the Code's generic severability clause.

---

5. T.C.A. §§ 13–20–203(a) and 205(c).

6. Then–T.C.A. §§ 6–309 and 310.

7. Chapter 753 of the Public Acts of 1974.

Because we believe that the Chancellor acted correctly in eliding the population exclusion brackets found in T.C.A. § 67–7–211 while upholding the constitutionality of the remainder of the severance tax, we conclude that he did not err by altering his original Final Judgment of November 2, 1993, to reflect elision of the brackets.

Nolichuckey's final issue is whether it is due a tax refund, plus statutory interest and attorneys' fees, "[i]n view of Chapter 553, Public Acts of 1994, in which the legislature deleted Sections 67–7–211 and 67–7–221 from the Tennessee Code Annotated." As we have noted above, the General Assembly's passage of C. 553, P.A.1994 is yet another in a series of legislative efforts to **preserve** the severance tax. Because we believe that the severance tax, shorn of its population exclusion brackets, is constitutional, we conclude that Nolichuckey is not due a refund, interest, or attorney's fees.

The trial court's judgment is affirmed and this cause is remanded to the trial court for the collection of costs and such other action as may be appropriate. The costs of this appeal are taxed against the Appellant and its surety.

GODDARD, P.J. (E.S.), and McMURRAY, J., concur.