IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 21, 2002 Session

**DECATUR COUNTY, TENNESSEE**
**v.**
**VULCAN MATERIALS COMPANY**

_____

**VULCAN MATERIALS COMPANY, WEST TENNESSEE GRAVEL**
**COMPANY, TINKER SAND & GRAVEL COMPANY, INC.,**
**and McCLANAHAN ROCK PRODUCTS**
**v.**
**DECATUR COUNTY, TENNESSEE**

**Appeal from the Chancery Court for Decatur County**
**No. 2624     Ron E. Harmon, Chancellor**

———————————————

**No. W2001-00858-COA-R3-CV - Filed December 12, 2002**

———————————————

This case involves the constitutionality of a mineral severance tax increase.  In 1984, the Tennessee General Assembly enacted a public act of statewide application authorizing counties to collect a mineral severance tax, directing that the proceeds of the tax be deposited in the county road fund. In 1987, the General Assembly passed a private act allowing Decatur County to impose a mineral severance tax, but allocating the revenue from the tax to the county's general fund.  Decatur County adopted the tax and the proceeds went to the county's general fund.   In 1994, the General Assembly amended the private act to provide for an increase in the mineral severance tax.  Decatur County adopted the increased rate, and then filed suit against a company that severed minerals from the earth in that county, to collect the mineral severance tax at the increased rate.  The mineral company, and three other mineral companies, resisted payment of the tax, arguing inter alia that the tax was unconstitutional under Article XI, Section 8 of the Tennessee Constitution, the equal protection clause, because the proceeds were allocated to the county's general fund, rather than to the county road fund, as directed in the public act authorizing the tax.   After a trial, the trial court held that the mineral companies were estopped from arguing that the tax was unconstitutional, and, in the alternative, that the tax was constitutional because the mineral companies failed to show that there was not a rational basis for the allocation of the funds to the county's general fund rather than to the road fund.  Both parties appealed.  We affirm in part and reverse in part, finding that the mineral companies were not required to pay the tax in protest, that the mineral companies have standing to sue and are not estopped from contesting the constitutionality of the tax, and finally that the tax is

constitutional because there is a rational basis for allocating the revenue to the county's general fund rather than to its road fund.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part**

HOLLY K. LILLARD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Robert E. Boston and Mark W. Peters, Nashville, Tennessee, for appellants Vulcan Materials Company, West Tennessee Gravel Company, Tinker Sand & Gravel Company, Inc., and McClanahan Rock Products.

James I. Pentecost and Jennifer K. Craig, Jackson, Tennessee, for appellees, Decatur County, Tennessee.

**OPINION**

In 1984, the Tennessee General Assembly enacted section 67-7-201 of Tennessee Code Annotated, a Public Act ("Public Act") that authorizes counties to impose a mineral severance tax on entities that sever minerals from the earth. The Public Act requires that the county legislative body authorize the tax, and directs the county to deposit the revenue from the tax into the county's road fund. Tenn. Code Ann. § 67-7-201(a).[1]

In 1986, the legislative body of Plaintiff/Appellee Decatur County, the County Commission, discussed adopting a mineral severance tax, proposing to allocate the revenues to the county general fund rather than to the county road fund. On March 12, 1987, the Tennessee General Assembly enacted a Private Act authorizing Decatur County to assess a mineral severance tax of five cents per ton of minerals severed from the earth. The Private Act directed that the revenue from the tax be deposited into the Decatur County general fund or such other fund as designated by the Decatur County legislative body. On May 18, 1987, the Decatur County Commission adopted the mineral severance tax authorized by the General Assembly.

Over six years later, on February 2, 1994, the Tennessee General Assembly amended the Private Act, increasing the authorized tax rate from five cents to fifteen cents per ton of minerals severed. On October 17, 1994, the Decatur County Commission adopted the mineral severance tax at the increased rate; however, the Commission deferred collection of the increased tax until April 30, 1995.

---

[1]The Public Act also includes a population exclusion provision that allows counties within certain population parameters to allocate the tax collected to "the county road fund, the county general fund or any other fund of the county." Tenn. Code Ann. § 67-7-201(b). Appellee Decatur County does not fall within these population parameters.

On February 13, 1995, employees of Defendant/Appellee Vulcan Materials Company ("Vulcan") told a Decatur County official that Vulcan believed that the mineral severance tax was unconstitutional because the funds were being deposited into the County general fund rather than into the County road fund, as directed in the Public Act. The County denied Vulcan's request to cease collecting the tax. The next day, the Decatur County Commission adopted a resolution asking the Tennessee General Assembly to amend section 67-7-201 of Tennessee Code Annotated to exempt Decatur County from the provision requiring the tax revenue to be allocated to the County road fund. No such amendment was enacted by the General Assembly.[2]

On November 21, 1995, Decatur County filed a lawsuit against Vulcan Materials Company for failure to pay the mineral severance tax at the increased rate for the month of May 1995. Decatur County argued that, although the collection of tax was deferred until after April 30, 1995, the deferment was only a grace period, and therefore the effective date of the tax was still October 17, 1994. Thus, Decatur County claimed, the minerals that Vulcan severed and sold in May 1995 were subject to the increased tax rate.

Vulcan's response to Decatur County's lawsuit asserted that the tax was illegal, and that the doctrine of unclean hands prevented Decatur County from collecting the tax. Vulcan claimed that the tax was unconstitutional because the County unlawfully deposited the collected revenue into its County general fund rather than its County road fund.[3] Vulcan was joined by three other companies subject to the Decatur County mineral severance tax, West Tennessee Gravel Company, Tinker Sand & Gravel Company, Inc., and McClanahan Rock Products (hereinafter collectively "mineral companies").

On May 2, 1997, the mineral companies moved for summary judgment, asserting the unconstitutionality of the mineral severance tax allocation. The motion was denied. The mineral companies were granted permission by the trial court to seek permission from this Court to appeal the denial of the summary judgment motion. This Court denied the mineral companies' application for interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure.

---

[2]On September 27, 1995, the Tennessee Office of the Attorney General issued an opinion with regard to the following question: "Whether private acts enacted on or after June 5, 1984, distributing severance tax revenues to funds other than the county road fund, conflict with the general law and are unconstitutional?" Tenn. Op. Atty. Gen. No. 95-100. The opinion stated that private acts enacted after June 5, 1984 are constitutionally suspect and quite possibly unconstitutional. The Attorney General opined, however, that although "[t]he legislature has expressed an intent to eliminate future private acts concerning mineral severance taxes after a specific date," that "a private act that has a demonstrable rational basis for special treatment for a particular county could still be upheld under the established interpretation of Article XI, Section 8 of the Tennessee Constitution." The Attorney General indicated that this was more likely to occur in counties with a small population and very large deposits of taxable minerals.

[3]Because Vulcan questioned the constitutionality of the tax, Decatur County furnished a copy of their complaint to the Tennessee Attorney General. The Attorney General declined to defend the constitutionality of the Private Act, citing the Act's limited application as well as sufficient representation at the county level.

On September 25 and 26, 2000, a bench trial was held. Decatur County argued at trial that Vulcan should be required to pay the mineral severance tax at the increased rate for minerals severed and sold in May 1995. Vulcan argued that the County had deferred implementation of the increased tax rate until after April 20, 1995. In addition, the mineral companies asserted that the tax was a violation of the "equal protection" provision of the Tennessee Constitution because the Private Act permitted Decatur County to allocate the tax revenues to its general fund, contrary to the Public Act applicable to all counties directing that such revenues be allocated to the road fund. Decatur County maintained that the tax was not unconstitutional, and argued the mineral companies were estopped from asserting that the tax was unconstitutional because they had paid the tax at the previous rate since 1987.

At trial, the parties agreed that, in order to find the tax was not unconstitutional, the trial court had to conclude that Decatur County had a rational basis for allocating the revenues from the mineral severance tax to the County general fund instead of to the County road fund. Consequently, the County introduced into evidence exhibits and witness testimony regarding its reasons for directing the revenues to the general fund. The Decatur County Trustee, as well as Decatur County Commissioners, testified at length on the County's financial difficulties and crises that the County faced when the severance tax was implemented in 1987. They testified that a wheel tax and a sales tax referendum had been voted down by Decatur County residents, and that, at one time, the general fund was so depleted that the County had to borrow money for general operating expenses. A Decatur County Executive testified that County employees needed medical insurance, a retirement plan, and wage increases. Decatur County presented proof that, prior to implementation of the mineral severance tax, the recreation department, the sheriff's department, and the fire department all needed operating expenses; that the County did not have funds for a new jail that had been required by court order; and that County schools were in need of repairs. The Decatur County Executive testified that the County Commission at that time was attempting to keep County tax rates low in consideration of the large proportion of poor and elderly residents in the County.

The parties stipulated that Decatur County ranks seventy-second out of ninety-five counties in per-capita income, and that it ranks fifty-ninth out of ninety-five counties for miles of county roads. Trial exhibits showed that Decatur County had the twenty-first lowest property tax in the State, and that the County's tax rate at the time of the trial was the eighth lowest in the State. Witness testimony evinced that Decatur County has an "average" amount of minerals as compared to other counties in Tennessee; however, exhibits at trial showed that among counties that collected the mineral severance tax, Decatur County collected the second highest amount. A representative of the Tennessee County Technical Assistance Service ("CTAS"), a state-run entity tasked with assisting counties in their operations, testified that, not including federal dollars, almost twenty-nine percent of Decatur County's budget was derived from the severance tax revenue, which was the largest percentage of any county in Tennessee.

On March 8, 2001, the trial court issued its findings. The trial court found that the minerals sold by Vulcan in May 1995 were severed, ready for sale, and stockpiled prior to the effective date of the tax increase, and that therefore, Vulcan owed no additional tax for that time. The trial court

also concluded that Vulcan was estopped from arguing the constitutionality of Decatur County's imposition of the mineral severance tax because of the passage of time. In the alternative, the trial court found that Decatur County had a rational basis for the allocation of its mineral tax revenues and that the mineral companies failed to carry their burden of proving that the allocation of the tax revenue was unconstitutional. The trial court held that the County "needed the money for general operating expenses and to cover costs out of its general funds and did not require the money in its road fund," and that "other funds coming into the road fund were sufficient to meet the demands of the road fund." The trial judge stated:

> It does not appear logical or reasonable that the county would divert much needed funds from its general fund into the road fund where the need for said funds did not exist and were either to be held in perpetuity or uselessly applied where no actual need existed while the general fund of the county providing for all other necessary governmental tasks lay in want.

Thus, the trial court held that the mineral companies were required to pay the tax for minerals severed after May 1995. From this judgment, both Decatur County and the mineral companies now appeal.

On appeal, the mineral companies argue that the tax is unconstitutional, maintaining that the trial court erred when it found that Decatur County's "need" for the additional revenue was a rational basis for reallocating the funds to the County general fund. The mineral companies also assert that the trial court erred when it found that they were estopped from filing suit against Decatur County because the County failed to plead the statute of limitations, or payment under protest, and because estoppel is not favored under Tennessee law. Decatur County maintains on appeal that the trial court properly found that its allocation of the tax revenue to the County general fund is constitutional, and that the mineral companies were estopped from filing suit against Decatur County. Decatur County argues that the mineral companies should be barred from challenging the legality of the tax because they failed to pay under protest, and that the mineral companies do not have standing to bring their counterclaim because they have suffered no injury. Decatur County also contends that the trial court erred when it found that Vulcan was not liable, at the higher tax rate, for minerals it sold during May 1995. We address first the mineral companies' standing to bring suit and the timeliness of their action, then the constitutionality of the tax revenue allocation, and finally, Vulcan's tax liability at the increased rate for the month of May 1995.

The standard of review on appeal is de novo with a presumption of correctness of findings of fact, unless the preponderance of the evidence shows otherwise. Tenn. R. App. P. 3(d); *see Wright v. City of Knoxville*, 898 S.W.2d 177, 181. Similarly, questions of law are reviewed de novo; however, no presumption of correctness attaches to questions of law. *See Barge v. Sadler*, 70 S.W.3d 623, 686 (Tenn. 2002).

Decatur County argues that the mineral companies may not contest the legality of the mineral severance tax at the increased rate because they failed to pay the disputed tax under protest. Decatur County relies on section 67-1-901(a) of Tennessee Code Annotated, which provides:

> In all cases where not otherwise provided in which an officer, charged by law with the collection of revenue due the state, shall institute any proceeding, or take any steps for the collection of the sum alleged or claimed to be due by the officer from any citizen, the person against whom the proceeding or step is taken shall, if that person conceives the same to be unjust or illegal, or against any statute or clause of the constitution of the state, pay the same under protest.

Tenn. Code Ann. § 67-1-901 (Supp. 2001). Decatur County further cites section 67-1-912, which states that section 67-1-901 applies to the collection of taxes by a county, and requires that all such actions be brought within six months of the protest payment of the disputed debt. Tenn. Code Annotated § 67-1-912(b)(2) (Supp. 2001).

The mineral companies maintain that "payment under protest" is not a condition precedent to a claim that the tax is illegal. The mineral companies rely on section 67-1-1807 of Tennessee Code Annotated, which states:

> (d)(1)  It shall not be a condition precedent for suit for recovery of taxes paid on or after January 1, 1986, that the same be paid under protest, involuntarily, or under duress.
> . . . .
> (e)  To the extent that the provisions of this section conflict with any other provision of law, the provisions of this section shall control and supersede all such laws.

Tenn. Code. Ann. § 67-1-1807 (1998). Thus, in a suit to recover taxes paid after January 1, 1986, payment of the tax under protest is not a condition precedent to a claim against the governmental entity imposing the tax. The language of section 67-1-1807 is quite broad, and would encompass claims regarding taxes paid to a municipality such as Decatur County, as well as taxes paid to the State.[4] Further, the statute clearly states that the provisions of section 67-1-1807 will control in the

---

[4]In the two prior decision by this Court, ***Lebanon Liquors v. City of Lebanon***, 885 S.W.2d 63 (Tenn. Ct. App. 1994),and ***Hoover, Inc. v. Rutherford County***, 885 S.W.2d 67 (Tenn. Ct. App. 1994), it was held:

> Plaintiffs argue that T.C.A. § 67-1-901(b) relieves the requirement of payment under protest as a condition precedent to the recovery of taxes to a municipality, by virtue of the language of T.C.A. § 67-1-911(a) which states that "the provisions of §§ 67-1-901 . . . apply to the recovery of all taxes collected by any of the municipalities of this state." The legislature added T.C.A. § 67-1-901(b) in 1986 relieving the requirement of payment under protest for taxes due or collected by the State. However, no effort was made by the legislature to amend the specific provisions of T.C.A. §67-1-
> (continued...)

event of a conflict of law. Under these circumstances, we must conclude that the mineral companies were not required to pay the disputed tax under protest as a condition precedent to asserting a claim against the county regarding the illegality of the tax.

Decatur County next argues that the mineral companies have no standing to sue the County because the mineral companies have not suffered an injury. Decatur County asserts that the mineral companies cannot show they are subject to an increased tax burden, nor can they show that the funds collected are being allocated in contravention of the Private Act. Decatur County also claims that, because the mineral companies are not entitled to a refund even if the allocation of the tax revenue is declared unconstitutional, the mineral companies are therefore not entitled to relief. The mineral companies, on the other hand, argue that they have standing because the Public Act requires the County to utilize the tax revenue for a specific purpose, and the County is using those funds in a contrary way. If the allocation of the tax is unconstitutional, the mineral companies argue, the tax is void and they are entitled to a refund of taxes paid.

Standing is a judicially created doctrine mandating that a party objecting to the constitutionality of a law have a personal stake in the outcome of the controversy in order to bring the action. *Metro. Air Research Testing Auth., Inc. v. Metro. Gov. of Nashville and Davidson County*, 842 S.W.2d 611, 615 (Tenn. 1992). This determination is made without regard to the correctness, or constitutionality, of the law. *Nat'l Gas Distribs. v. Sevier County Util. Dist.*, 7 S.W.3d 41, 44 (Tenn. Ct. App. 1999) (citation omitted). In order to show that it is properly situated to bring such an action, a party must demonstrate "(1) that it sustained a distinct and palpable injury, (2) that the injury was caused by the challenged conduct, and (3) that the injury is apt to be redressed by a remedy that the court is prepared to give." *Metro. Air* at 615 (citing *Allen v. Wright*, 468 U.S. 737, 752 (1983)). Here, the mineral companies operate their businesses in Decatur County, pay the severance tax to the County, and the County accepts their payments of the mineral severance tax at issue. While a finding that the allocation of the tax was unconstitutional would not likely result in a refund,[5] the mineral companies have sufficient specific injury to confer standing. *See Kennedy v. Montgomery County*, 38 S.W. 1075, 1075 (Tenn. 1896).

Next, the mineral companies argue that the trial court erred in finding that they failed to timely bring suit against Decatur County. The decision of the trial court appears to be based on the

---

[4](...continued)
911(b) which explicitly requires payment under protest *to a municipality*.

*Hoover*, 885 S.W.2d at 69-70 (quoting *Lebanon Liquors*, 885 S.W.2d at 66). On this basis, the court held that payment under protest was a condition precedent to the recovery of taxes from a municipality. In neither case, however, was section 67-1-1807 of Tennessee Code Annotated raised as an issue on appeal. Consequently, these decisions are inapplicable and we conclude that section 67-1-1807 governs, removing the requirement of payment of disputed taxes as a condition precedent to a suit for recovery of taxes from a municipality as well as the State.

[5]Such a finding would not render the tax itself unconstitutional, only the allocation of the revenues, and would result in a conclusion that the County was required to allocate the revenues to its road fund.

doctrine of estoppel.[6]  The trial judge stated that there was ample time between 1987 and 1995 for the mineral companies to challenge the constitutionality of the tax, and that they had proferred no reason justifying the delay of many years in bringing suit.  Consequently, the trial court held that the mineral companies were "now estopped by their failure to act."

> The equitable doctrine of estoppel has been described as a defense that
>
> . . . arises from the conduct or silence of a party and is sometimes referred to as equitable estoppel . . . .  When a man has been misled by the untruth propounded by another, *and acted to his detriment in reliance upon the misrepresentation*, the misleading party will be estopped to show that the true facts are contrary to those he first propounded.

*Duke v. Hopper*, 486 S.W.2d 744, 748 (Tenn. Ct. App. 1972) (emphasis added); *see also Hicks v. Cox*, 978 S.W.2d 544, 550 (Tenn. Ct. App. 1998); *Arthur v. Lake Tansi Village, Inc.*, 590 S.W.2d 923, 930 (Tenn. 1979).  Thus, in order to assert estoppel as a defense, the party asserting the doctrine must have acted to his detriment in reliance on a misrepresentation.  In this case there is no allegation of a misrepresentation and Decatur County does not allege that it acted to its detriment based on the mineral companies' actions or failure to act.  Hence, the doctrine of estoppel is inapplicable to this lawsuit.  Consequently, the decision of the trial court with regard to the failure of the mineral companies to timely assert the illegality of the allocation of the tax is reversed.

We now address the constitutionality of the Private Act enacted by the General Assembly pertaining to Decatur County, allocating the revenue from the mineral severance tax to the County general fund instead of its road fund.  Sections 67-7-201 and 67-7-207 of Tennessee Code Annotated, public acts with statewide application, permit any county to levy a mineral severance tax on all "sand, gravel, sandstone, chert and limestone severed from the ground within its jurisdiction." Tenn. Code Ann. § 67-7-201(a) (1998).  The statute directs:  "The tax shall be levied for the use and benefit of the county only, to be allocated and applied to its county road fund . . . ." *Id.*  It states: "These revenues shall become a part of the county road fund of the county, and shall be used for the construction, maintenance and repair of the county system." Tenn. Code Ann. § 67-7-207(b) (1998). In contrast, Private Chapter Number 35, Private Acts of 1987, authorizes Decatur County to deposit the tax revenue collected from the mineral severance tax "in the general fund of Decatur County for general county purposes, or such other fund as may be designated by resolution of the Decatur County legislative body." 1987 Tenn. Priv. Acts 35, § 6.  The record shows that between June 1987 and August 2000, Decatur County collected $ 2,900,656.11 in mineral severance taxes from the four mineral companies that are parties to this appeal, of which $ 2,829,243.11 was allocated to Decatur County's general fund, and $ 71,413 allocated to the County's road fund.

---

[6] The basis for the trial court's holding is somewhat unclear.  It is possible that the finding of untimeliness refers to sections 67-1-901(a) and 67-1-912 of Tennessee Code Annotated, which provide that a lawsuit to recover taxes must be filed within six months after payment under protest of the tax in dispute.  As noted above, payment under protest is not required; therefore, this statute is inapplicable.

The mineral companies assert on appeal that the reallocation of the tax revenue is in violation of Article XI, Section 8 of the Tennessee Constitution, which states: "The legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land." Tenn. Const. art. XI, § 8. Tennessee courts have long recognized that Article XI, Section 8 is similar to the equal protection clause of the United States Constitution. *See King-Bradwall P'ship v. Johnson Controls, Inc.*, 865 S.W.2d 18, 21 (Tenn. Ct. App. 1993). Consequently, an equal protection analysis is applied to a challenge under Article XI, Section 8 of the Tennessee Constitution. Therefore, to survive such a constitutional challenge, Private Act Number 35 must pass a "reasonable relationship" or "rational basis" test. *Stalcup v. City of Gatlinburg*, 577 S.W.2d 439, 442 (Tenn. 1979); *Brentwood Liquors Corp. of Williamson County v. Fox*, 496 S.W.2d 456, 457 (Tenn. 1973). If the Private Act does not pass the "reasonable relationship" or "rational basis" test, it is in contravention to the general law, and consequently, unconstitutional. *See Harwell v. Leech*, 672 S.W.2d 761 (Tenn. 1984).

We are mindful of the heavy presumption that legislation enacted by the Tennessee Legislature is constitutional. The Legislature has the ability to do "all things not prohibited by the Constitution of this State or of the United States." *Nolichuckey Sand Co. v. Huddleston*, 896 S.W.2d 782, 788 (Tenn. Ct. App. 1994) (citations omitted). Thus, this Court must uphold legislation enacted by the General Assembly, unless such a law "directly impinges on the state or federal constitution . . ." *Id.* (citation omitted). It is our obligation, when construing a statute, to adopt a construction that upholds the statute and avoids constitutional conflict when "any reasonable construction exists that satisfies the requirements of the Constitution." *Id.* (citation omitted).

The mineral companies assert that, under Tennessee law, for a private act that is in opposition to general law to be constitutional, the classification the private act makes must be reasonably related to or rationally based upon the object of the enactment. *See Stalcup*, 577 S.W.2d at 442; *Brentwood Liquors Corp.* 496 S.W.2d at 457. In *Stalcup v. City of Gatlinburg*, the Tennessee Supreme Court found that a tax imposed on businesses, in contravention of state law, was constitutional because the taxation on Gatlinburg businesses, as opposed to other businesses in Tennessee, was rationally related to the object of the enactment, that is, the burden placed on the City of Gatlinburg by the large amount of tourism in Gatlinburg. *Stalcup*, 577 S.W.2d at 442. Similarly, in *Brentwood Liquors Corp. of Williamson County v. Fox*, the Tennessee Supreme Court found that a county law imposing a tax in excess of the state-authorized rate on liquor stores in Williamson County, for the benefit of the county hospital, was not rationally related to any object of the enactment of that statute, because there was no stated reason for the additional tax burden on Williamson County liquor dealers as opposed to similar liquor dealers throughout the state. *Brentwood*, 496 S.W.2d at 454-55, 457.

In this case, unlike *Stalcup* and *Brentwood Liquor Corp.*, the classification made by the Private Act in dispute is the *allocation* of the tax revenue, not the *imposition* of the tax itself. There is no discrimination in the imposition of the tax in Decatur County, only a change in the allocation of the tax revenue. The record from the trial court below shows that Decatur County collects the second-highest amount of mineral severance tax in the State. Of the seven highest-collecting

counties in the State, six have a greater per-capita income level than Decatur County, and all have a greater population, greater land area, and more miles of county road than Decatur County. It is undisputed that, while the roads did not need additional funding, the general fund was depleted to the point that the County was compelled to borrow money for operating expenses. The Sheriff's department, the fire department, the recreation department, and the solid waste department all lacked sufficient funding. The Decatur County Jail was under an order to add jail cells; the police department needed new patrol cars; and the County schools needed a variety of repairs. The testimony indicated that the County had a disproportionate number of low-income and elderly citizens who would have difficulty paying taxes, such as property taxes, at a level that would adequately fund necessary County government operations.

Thus, in this instance, Decatur County has substantially less residents who pay property taxes and other general taxes to fund county government services, such as fire, police, and schools. These services are necessary. Some monies are of course also necessary to fund repair of county roads. A rural county, however, such as Decatur County, has less need for funds for roads.

Meanwhile, Decatur County has substantial mineral deposits subject to the mineral severance tax. Without question Decatur County is authorized to collect the mineral severance tax at the increased rate, and the mineral companies in this case are obligated to pay it. Under the reasoning urged by the mineral companies, if the County collected the revenue from the mineral severance tax and put it in the county road fund and paved the county roads with gold, leaving other necessary government services wanting, this would be constitutionally acceptable. Decatur County chose instead to direct those revenues to general government operations. Based on the record in this case, we find there is a rational basis for this decision and conclude that the allocation of the tax revenue is not unconstitutional.

Finally, Decatur County asserts that the trial court erred in finding that Vulcan did not owe additional taxes for the period of May 1995 for minerals sold during that month. In October 1994, the Decatur County Commission adopted a resolution to increase the mineral severance tax from five cents to fifteen cents per ton. At that time, the Commission deferred collection of the tax at the increased rate until after April 30, 1995. The trial court found that minerals sold by Vulcan in May 1995 were "severed, ready for sale, and stockpiled prior to the effective date of the increase tax . . . ." Vulcan paid the tax rate of five cents per ton for minerals that were sold in or after May 1995, but severed and stockpiled prior to May 1995. Decatur County argues that the County Commission only meant to defer *collection* of the tax, and not *liability* for the tax, and therefore, the new tax rate applied beginning on October 17, 1994, when the County Commission adopted the resolution increasing the tax rate. The minutes of the Decatur County Commission meeting dated October 17, 1994 state that "tax collection" was "to be deferred until after April 30, 1995." While this is not entirely clear, we conclude that the resolution indicates an intent that the increased tax rate not apply until May 1995. Consequently, the trial court properly held that Vulcan is not liable for additional taxes for the period of May 1995.

In sum, we reverse the trial court's finding that the mineral companies were required to pay the disputed tax under protest, and that they were estopped from questioning the constitutionality of the allocation of the tax. We affirm the trial court's finding that the Private Act allocating the revenue from the mineral severance tax to the Decatur County general fund is not unconstitutional. We affirm the trial court's holding that Vulcan bears no additional tax liability for the month of May 1995.

The decision of the trial court is affirmed in part and reversed in part as set forth above. Costs are taxed equally to appellee Decatur County, Tennessee, and appellants Vulcan Materials Company, West Tennessee Gravel Company, Tinker Sand & Gravel Company, Inc., and McClanahan Rock Products, and their sureties, for which execution may issue if necessary.

_____
HOLLY K. LILLARD, JUDGE