STATE *ex rel.* SCANDLYN *v.* GEORGE TROTTER, JUDGE, *et al.*[*]

(*Knoxville.* September Term, 1925.)

1. **MANDAMUS.** County court will not be required to give effect to law which did not become effective in time to permit prescribed procedure in current year (Private Acts 1925, chapter 625).

  Mandamus will not issue to require county court to give effect to Free Text-Book Act, which did not become operative in time to allow for the procedure prescribed by it in the current year. (*Post, p. 33.*)

2. **MANDAMUS.** Where appeal on mandamus instituted to secure free text-books for school term opening in September is decided in following March, it will be dismissed (Private Acts 1925, chapter 625).

  Appeal, in proceedings for mandamus instituted to secure free text-books under Private Acts 1925, chapter 625 for school term opening in September, when decided in the following March will be dismissed, as the writ would not effectively give the relief sought. (*Post, pp. 33, 34.*)

  Case cited and approved: State ex rel. v. Bush, 208 S. W., 607, 141 Tenn., 233.

3. **STATUTES.** Act providing free text-books for counties with a population from one hundred and twelve thousand to one hundred and thirteen thousand violates the constitutional prohibition against special legislation (Constitution article 1, section 8, and article 11, section 8; Private Acts 1925, chapter 625).

  Private Acts 1925, chapter 625, providing free text-books for counties with a population from one hundred and twelve thousand to one

---

*On constitutionality of statutes providing for free text-books and other school supplies for individual use of pupils, see note in 17 A. L. R., 299.

State ex rel. Scandlyn v. Trotter.

hundred and thirteen thousand, violates Constitution, article 1, section 8, and article 11, section 8, forbidding special legislation, the classification being one palpably arbitrary and partial, and the fact that all counties might possibly come within the classification does not justify it. (*Post*, *pp.* 34-36.)

Acts cited and construed: Acts 1925, ch. 625.

Cases cited and approved: Sutton v. State, 96 Tenn., 696; Weaver v. Davidson County, 59 S. W., 1105; Re-districting Cases, 80 S. W., 750; Flemming v. Memphis, 148 S. W., 1057; State v. Turnpike Co., 181 S. W., 682.

Case cited and distinguished: Murray v. Board of Com., 84 N. W., 103.

Constitution cited and construed: Art. 1, sec. 8; Art. 11, sec. 8.

4. **STATUTES.** Special act, providing for free school text-books in certain counties, affects citizens in their private relation and is not within the exception to the constitutional prohibition against special laws, allowing passage of special laws affecting counties, as political agencies (Constitution article 1, section 8, and article 11, section 8; Private Acts 1925, chapter 625, Divorce Proctor Act [Acts 1915 chapter 121]).

Private Acts 1925, chapter 625, providing free text-books in grammar schools in certain counties, affects primarily private rights, its benefits and burdens affecting the individual citizens in their private relation rather than the county in the form, machinery, and instrumentalities of governmental operation and control, and is not within the exception to Constitution, article 1, section 8, and article 11, section 8, forbidding special laws, that allows legislature to pass special laws affecting county as a political agency: unlike the Divorce Proctor Act of 1915. (*Post*, *pp.* 36-38.)

Acts cited and construed: Acts 1925, ch. 625; Acts 1915, ch. 121.

Cases cited and approved: Wilson v. Wilson, 185 S. W., 718; Re-districting Cases, 80 S. W., 750, 111 Tenn., 234; Prescott v. Duncan, 126 Tenn., 106; State v. Columbia, etc., Turnpike Co., 181 S. W., 682.

5. **CONSTITUTIONAL LAW.**

Need and propriety of extending free school privileges to include books is question of policy for legislature, not for courts. (*Post*, pp. 38, 39.)

---

*Headnotes 1. Mandamus, 38 C. J., Section 340; 2. Appeal and Error, 3 C. J., Section 115; 3. Statutes, 36 Cyc., p. 992; 4. Statutes, 36 Cyc., p. 1010; 5. Constitutional Law, 12 C. J., Section 390.

---

FROM KNOX.

---

Appeal from the Circuit Court of Knox County.— Hon. A. C. GRIMM, Judge.

LEON ADLER, for relator.

JAMES G. JOHNSON, for Trotter and others.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is an appeal from an order denying a writ of mandamus and dismissing the petition therefor. By chapter 625 of the Private Acts of 1925, passed April 6th and approved April 14th, provision was made for free text-books in grammar schools of counties having a population of not less than one hundred twelve thousand and not more than one hundred thirteen thousand (Knox county). It was made mandatory upon the county courts to make appropriations for said purpose in such sums as should be fixed by the county boards of education, and the boards of education were directed to

State ex rel. Scandlyn v. Trotter.

make and report the first estimates to the April, 1925, terms of the courts; the appropriations to be made at the July terms following. It appears that the April, 1925, quarterly court for Knox had met and adjourned before the act in question became a law. No estimate was made or reported by the board of education as called for by the act. Subsequently and before the July meeting of the quarterly court, the superintendent of schools for the county made an estimate and reported same to the finance committee of the court; but the committee failed or refused to report same to the court. No appropriation was made by the court at its July session, and on the 9th day of July this petition was filed praying for mandamus to require the county judge, county court, and board of education to comply with the act and make the appropriation for application in the year 1925.

Responsive pleadings were filed and proof was taken and the case heard by the honorable circuit judge, who found that the act did not become operative in time to allow for the procedure prescribed by the act in the year 1925. To this we are constrained to agree. The act plainly calls, first, for the action of the board of education, and, second, for a report of its estimate to the April term of the court, when it would be received and lie over for this appropriation at a succeeding term, giving time for consideration and the inclusion of the sum required in the annual budget of county expenses. The trial judge also held the act unconstitutional on several grounds.

As shown by the petition, the relief sought had relation to the school term opening in September, 1925. It is quite obvious that the time has now passed when

the granting of this petition by this court could effectively give the relief sought, and on this ground, under well-recognized rules of practice, the appeal must be dismissed. See *State ex rel.* v. *Bush,* 208 S. W., 607, 141 Tenn., 233, quoting 2 R. C. L., 169, 3 C. J., 360, and other authorities.

However, as before stated, the constitutionality of the act was challenged on several grounds, and this attack was sustained by the trial judge, and in this situation it is proper that this court should pass upon the constitu-tionality of the act in this case. We are of opinion that the classification is palpably arbitrary and partial, in that its application is confined to counties having a pop-ulation of not less than one hundred twelve thousand and not more than one hundred thirteen thousand by the census of 1920, or any subsequent census. No reason is suggested, and none can be conceived of, why the citizens of counties of the designated population should be given the benefits and onerated with the burdens incident to this legislation not enjoyed by or imposed upon citizens of other counties of the State. The education of the chil-dren of the State is a duty and a privilege applicable to all its citizens alike, without discrimination and without respect to county lines; and the obligation to furnish, and the privilege of enjoying, free text-books cannot con-stitutionally be so restricted. If it should be conceded that a proper classification might be made between the populous counties and those less so, the classification here attempted to be made cannot be so justified. Un-der the act in question, a county having a population of one hundred fourteen thousand, or a county having a population of one hundred eleven thousand, is excluded. For such a distinction, as before stated, no justification

State ex rel. Scandlyn v. Trotter.

can be offered. We are therefore constrained to hold, however desirable a lawful provision for free text-books might be, that the act under consideration is in violation of section 8, article 1, and section 8, article 11, of our Constitution. This construction and ruling is in harmony with a long line of decisions by this court, among which are *Sutton* v. *State*, 36 S. W., 697, 96 Tenn., 696, 33 L. R. A., 589; *Weaver* v. *Davidson County*, 59 S. W., 1105, 104 Tenn., 315; *Redistricting Cases*, 80 S. W., 750, 111 Tenn., 274; *Flemming* v. *Memphis*, 148 S. W., 1057, 126 Tenn., 331, 335, 42 L. R. A. (N. S.), 493, Ann. Cas., 1913D, 1306; and *State* v. *Turnpike Co.*, 181 S. W., 682, 133 Tenn., 446.

Among other authorities cited with approval by Mr. Justice WILLIAMS in his opinion in the *Turnpike Co.*, Case, supra, is *Murray* v. *Board of Com.*, 84 N. W., 103, 81 Minn., 359, 51 L. R. A., 828, 83 Am. St. Rep. 379, which is particularly in point here. The act reviewed in that case provided for treatment at county expense of inebriates, and the court held that the evils of intemperance and the need for such legislation was not bounded by county lines; that the classification was arbitrary and the act unconstitutional. After announcing certain general rules well recognized in this State, the court said:

"Classification on the basis of population is proper for the purpose of legislation upon certain subjects, but not upon all, and the precise question here to be determined is whether there is any apparent natural reason why the treatment of indigent inebriates at the expense of the public should be limited to the counties having a population of fifty thousand or more, and all other counties excluded. Or, in other words, is there such a differ-

ence between urban and rural drunkenness, and its consequences to the drunkard, his family and the public, as to naturally suggest the necessity or propriety of a classification on the basis of population for the purpose of legislation upon the subject of the cure, at the cost of the public, of indigent inebriates? It would seem that this question must necessarily be answered in the negative.''

The court quite properly suggests that such a classification for the benefit of inebriates is as clearly arbitrary and partial, ''as would be a law providing for the care of insane persons or the poor of a limited number of counties at the cost of such counties, and excluding the insane and poor of all the other counties of the state.''

Nor can the population basis adopted in the instant act be justified upon the theory that all other counties may come within the designated class under some future census. The rule of reason must be applied. It is not within human probabilities that the population of Shelby county—more than two hundred thousand by the last census—or of Davidson county, will ever fall to the limits prescribed by this act; or, indeed, that the population of Moore, or Meigs, or Van Buren, or other counties having now a population of less than ten thousand, will reach such limits as to bring them within this act within any period of time to be practically computed. Bald theory must give way to reasonable expectations.

May this act, though special, be saved on the theory that it purports to deal with a county in its governmental capacity? There is no doubt, as said in *Wilson* v. *Wilson*, 185 S. W., 718, 134 Tenn., 697, sustaining the constitutionality of the Divorce Proctor Act of 1915 (Laws 1915,

chapter 121), ''that the legislature may pass special laws affecting particular counties as governmental or political agencies''—citing the *Redistricting Cases,* 80 S. W., 750, 111 Tenn., 234; *Prescott* v. *Duncan,* 148 S. W., 229, 126 Tenn., 106; *State* v. *Columbia, etc., Turnpike Co.,* 181 S. W., 682, 133 Tenn., 450.

It is sometimes difficult to draw the line of demarcation between acts dealing with counties and cities in their governmental or political capacity, and acts affecting the citizens in their private rights. Not every act purporting to empower, or restrict, counties and cities with respect to given matters, falls strictly within the first described class, as to which the legislation may, under our authorities, be special. In many of such cases, upon analysis it is apparent that the effect of the legislation is to affect private persons or corporations in their personal or property rights, so as to confer privileges or place burdens upon those individuals residing within the local limits defined by the special legislation. Illustrations are to be found in a number of our reported cases. In such cases it is held that the legislation violates the pertinent sections of our Constitution.

It may be conceded that legislation making provision for books for use in the free schools of the State calls, in a limited sense, for the exercise of governmental functions, but it affects primarily private rights. The benefits conferred and the burdens imposed affect the individual citizens in their private relations, rather than the county in its corporate capacity; that is, in the form, machinery, and instrumentalities of governmental operation and control.

The Divorce Proctor Act, *Wilson* v. *Wilson,* supra, is not controlling in the instant case, because, as therein held, it was "not designed immediately to affect the rights of the citizen," doing so only incidentally, dealing primarily with the county as a body politic. It created an office in the counties designated and prescribed the duties of the officer, with a view to the protection of the morals of the communities. Moreover, the limitation in that act to counties of over one hundred thousand population might well be justified as a reasonable classification since many reasons suggest themselves why that particular legislation would be called for in those counties containing the larger cities and congested centers, and not needed or desirable in smaller counties, which is not so in the instant case.

Attention is called in argument to the fact that a like law has been passed applicable to Davidson county. This but emphasizes the point of objection. The Constitution does not contemplate that the legislature may pick here and there counties or municipalities and confer upon them specially and exclusively privileges or burdens with respect to matters naturally applying generally throughout the State and affecting primarily individual citizens. The distinction thus made between different subdivisions of the State, unless some valid reason may be given therefor, is an unwarranted discrimination.

Conceding the power of the legislature to so extend free school privileges as to include books, and without questioning the need and propriety of so doing—which question of policy is for the legislature and not the courts—we are constrained to hold that no sound reason

has been, or can be, suggested why the county of Knox should be singled out of the counties of this State to bear the burdens or enjoy the benefits of this legislation. It is arbitrary and partial, and therefore unconstitutional; and the judgment must be affirmed.