IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 5, 2020 Session

**METROPOLITAN GOVERNMENT OF NASHVILLE AND
DAVIDSON COUNTY ET AL. v. TENNESSEE DEPARTMENT
OF EDUCATION ET AL.**

**Appeal from the Chancery Court for Davidson County
No. 20-0143-II     Anne C. Martin, Chancellor**

---

**No. M2020-00683-COA-R9-CV**

---

Davidson and Shelby counties sued the State of Tennessee to challenge the constitutionality of the Tennessee Education Savings Account Pilot Program. The trial court found that both counties had standing and that the act was unconstitutional under paragraph 2 of article XI, section 9 of the Tennessee Constitution. The State and intervening defendants appealed. We affirm.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Chancery Court
Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée Blumstein, Solicitor General, Stephanie A. Bergmeyer, Senior Assistant Attorney General, James Robert Newsom, Assistant Attorney General, E. Ashley Carter, Assistant Attorney General, Matthew Reed Dowty, Assistant Attorney General, and Shanell Lanette Tyler, Assistant Attorney General, for the appellants, Tennessee Department of Education, Commissioner of the Tennessee Department of Education, and Governor of the State of Tennessee.

Jason Irving Coleman, Brentwood, Tennessee, Braden H. Boucek, Nashville, Tennessee, Arif Panju, Austin, Texas, David G. Hodges, Arlington, Virginia, and Timothy Keller, Tempe, Arizona, for the appellants, Natu Bah, Builiguissa Diallo, Star Brumfield, and Bria Davis.

Brian Kirk Kelsey and Daniel R. Suhr, Chicago, Illinois, for the appellants, Greater Praise Christian Academy, Sensational Enlightenment Academy Independent School, Ciera Calhoun, Alexandria Medlin, and David Wilson, Sr.

Allison L. Bussell, Melissa S. Roberge, and Robert E. Cooper, Jr., Nashville, Tennessee, for the appellees, Metropolitan Government of Nashville and Davidson County, and Metropolitan Nashville Board of Public Education.

Emmett Lee Whitwell and Marlinee C. Iverson, Memphis, Tennessee, for the appellee, Shelby County Government.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

In 2019, the Tennessee General Assembly enacted the Tennessee Education Savings Account Pilot Program (the "ESA Act" or "the Act"). 2019 TENN. PUB. ACTS, ch. 506 (codified as Tenn. Code Ann. § 49-6-2601–2612). The ESA Act created a system to allow eligible students, in numbers rising over time from 5,000 to 15,000, to receive their share of state and local funds that would normally be sent to the school system they attend. Tenn. Code Ann. §§ 49-6-2604(c), -2605(c). An eligible student would use these funds to attend a private school. *See* Tenn. Code Ann. § 49-6-2602(9) (defining a "participating school" as "a private school" meeting certain requirements). The Act, based on the criteria for the eligible student, applies only to local education agencies ("LEAs") in Davidson and Shelby counties and the Achievement School District (ASD). Tenn. Code Ann. § 49-6-2602(3)(C).

The Metropolitan Government of Nashville and Davidson County ("Metro"), the Shelby County Government ("Shelby County"), and the Metropolitan Nashville Board of Public Education ("Metro School Board") sued Governor Bill Lee, Tennessee Department of Education Commissioner Penny Schwinn, and the Tennessee Department of Education (collectively "the State defendants" or "the State"). The plaintiffs maintained that the ESA Act violated several provisions of the Tennessee Constitution. The trial court allowed intervenors to participate as defendants: parents of public school children in Davidson and Shelby counties (the Davis and Bah intervenors respectively); and two independent schools wishing to accept eligible students, Greater Praise Christian Academy and Sensational Enlightenment Academy Independent School, plus additional parents who wish to take advantage of the ESA Act (collectively, the "Greater Praise intervenors").

The trial court expedited this matter because the State defendants intended to implement the ESA Act for the 2020-2021 school year. The State had begun accepting student applications and the private schools were making decisions about expansion and enrollment. The Greater Praise intervenors filed a motion to dismiss maintaining that the Metro School Board did not have standing to pursue this action and that all of the constitutional issues raised by the plaintiffs were without merit. The State defendants filed a motion to dismiss arguing that none of the plaintiffs had standing, two of the constitutional claims were not ripe for judicial decision, and the ESA Act did not violate the Tennessee Constitution. The plaintiffs filed a motion for summary judgment, claiming

that the ESA Act violated article XI, section 9 of the Tennessee Constitution. The State defendants filed a motion to consolidate this case with the similar case of *McEwen v. Governor Lee*, No. 20-0242-II. The Davis and Bah intervenors filed a motion for judgment on the pleadings on the grounds that the plaintiffs' complaint failed to state a claim upon which relief could be granted.

The trial court held a hearing on April 29, 2020, on the plethora of motions and issued its opinion on May 4, 2020. The learned chancellor dismissed the Metro School Board as a plaintiff for lack of standing, granted the plaintiffs' motion for summary judgment as to article XI, section 9 of the Tennessee Constitution, declared the ESA Act unconstitutional, and enjoined the State defendants from implementing the Act. The trial court deferred ruling on the other motions and, sua sponte, granted the parties the right to seek an interlocutory appeal to the Court of Appeals. On May 13, 2020, the trial court denied the defendants' joint motion for a stay pending appeal.

The State defendants and the Greater Praise and Bah intervenors filed Tenn. R. App. P. 9 applications for permission to appeal from the trial court's order. The State defendants and the Bah intervenors also moved this court for a stay pending appeal. By order of May 19, 2020, this court granted the applications for an appeal, specifying the two issues for appeal as follows:

1) Whether the trial court erred in ruling that the county government plaintiffs have standing to challenge the constitutionality of the ESA Program under the Home Rule Amendment.
2) Whether the trial court erred in ruling that the ESA Program violates the Home Rule Amendment, article XI, section 9 of the Tennessee Constitution.

This court expedited the appeal and declined to review the trial court's order denying a stay pending appeal. On June 4, 2020, the Tennessee Supreme Court declined to assume jurisdiction of the case or to review the denial of a stay.

Since the time the appeal was granted, this court has permitted a number of amici: the McEwen plaintiffs; Catholic Schools in Shelby and Davidson Counties; EdChoice Inc. and Foundation for Excellence in Education, Inc.; and the Tennessee Education Association, Metropolitan Nashville Education Association, and United Education Association of Shelby County.

STANDARD OF REVIEW

Standing

A Tenn. R. Civ. P. 12.02(6) motion to dismiss challenges the legal sufficiency of the complaint. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). We must accept "the allegations of fact as true. However, inferences to be drawn from the facts or legal conclusions set forth in the complaint are not required to be taken as true." *Nat'l Gas Distribs. v. Sevier Cnty. Util. Dist.*, 7 S.W.3d 41, 43 (Tenn. Ct. App. 1999) (citing *Riggs v. Burson*, 941 S.W.2d 47-48 (Tenn. 1997)). The facts alleged in the complaint in this case regarding standing are mainly based on statutes. The interpretation of statutes is a question of law which we review de novo with no presumption of correctness. *Wallace v. Metro. Gov't of Nashville*, 546 S.W.3d 47, 52 (Tenn. 2018). Standing is also a question of law reviewed de novo with no presumption of correctness. *See Cox v. Shell Oil Co.*, 196 S.W.3d 747, 758 (Tenn. Ct. App. 2005).

Tennessee Constitution, Article XI, Section 9

Summary judgment is the preferred method "for disposing of purely legal issues." *Hawkins v. Case Mgmt. Inc.*, 165 S.W.3d 296, 299 (Tenn. Ct. App. 2004). The interpretation of a constitutional provision is a question of law which we review de novo with no presumption of correctness. *Barrett v. Tenn. Occupational Safety & Health Review Comm'n*, 284 S.W.3d 784, 786 (Tenn. 2009).

ANALYSIS

## I. County Standing to Challenge the ESA Act

Standing is a judge-made doctrine used to determine whether a party is entitled to have a case decided on the merits. *Am. Civil Liberties Union v. Darnell*, 195 S.W.3d 612, 619 (Tenn. 2006). There are three elements to standing: "a distinct and palpable injury, . . . a causal connection between the claimed injury and the challenged conduct, . . . [and] a showing that the alleged injury is capable of being redressed by a favorable decision of the court." *Id*. at 620. The main focus of the arguments against standing in this case is on the injury requirement. The defendants and their supporting intervenors put forth several arguments involving the separateness of the LEAs from the county government.

The first argument is that the ESA Act addresses LEAs, not counties. Pursuant to Tenn. Code Ann. § 49-6-2602(7), the ESA Act uses the definition of LEA found in Tenn. Code Ann. § 49-1-103(2): "any county school system, city school system, special school district, unified school system, metropolitan school system or any other local public school system or school district created or authorized by the general assembly." Thus, LEAs include metropolitan and county school systems. Citing *Rollins v. Wilson Cnty. Gov't*, 154

F.3d 626 (6th Cir. 1998), the defendants and intervenors argue that school systems are separate from county governments. *Rollins*, however is a labor law case turning on "whether the Wilson County School System and Wilson County Government's Finance Department are a single employer." *Rollins*, 154 F.3d at 628. The answer in *Rollins* was "no," but that result has no bearing on the ESA Act standing issue presented here. *Id.* at 630.

The State defendants and the supporting intervenors suggest that the LEAs are akin to the special school district that was the subject of *Perritt v. Carter*, 325 S.W.2d 233 (Tenn. 1959). In *Perritt*, the Supreme Court ruled that a special school district was not a municipality within the meaning of article XI, section 9, paragraph 2 and no referendum was necessary. *Perritt*, 325 S.W.2d at 234. The *Perritt* Court did not conduct much analysis on this issue, relying instead on its decision in *Fountain City Sanitary District v. Knox County Election Commission*, 308 S.W.2d 482 (Tenn. 1957), which upheld the creation of a district within Knox County for the provision of sewerage disposal, garbage collection and disposal, a water system, and fire protection. In *Fountain City*, a majority of the Tennessee Supreme Court found that the sanitary district was not a municipality within the meaning of article XI, section 9, paragraph 2. *Fountain City*, 308 S.W.2d at 484. "Municipality," according to the court, meant "city." *Id*. A sanitary district is not a "city" and neither is a special school district. Likewise, these districts are not counties.

The differences between a special school district and the LEAs in this case are multiple. Perhaps the most significant is that a special school district has its own board of education. *See, e.g.*, 1919 TENN. PRIV. ACTS, ch. 374, § 2; 1981 TENN. PRIV. ACTS, ch. 62, § 2. LEAs in Davidson and Shelby counties are governed by the county boards of education in Davidson and Shelby counties. Also, the special school districts' school tax is established by the legislature. *See, e.g.*, 1919 TENN. PRIV. ACTS, ch. 374, § 7; 1981 TENN. PRIV. ACTS, ch. 181, § 1. The school tax for the LEAs in Davidson and Shelby counties is established by the respective county commissions. Furthermore, the counties in which a special school district is located have virtually no responsibilities for them. Counties have a number of vitally important responsibilities for LEAs. *See* Tenn. Code Ann. § 49-2-101. Thus, special school districts are irrelevant to the standing of the counties in this case.

The State defendants also argue that "'[t]he fact that there are financial connections between a local school system and local government does not detract from the essentially separate functions of these two entities.'" *Young v. Stamey*, No. E2019-00907-COA-R3-CV, 2020 WL 1452010, at *10 (Tenn. Ct. App. Mar. 25, 2020) (quoting *Putnam Cnty. Educ. Ass'n v. Putnam Cnty. Comm'n*, No. M2003-03031-COA-R3-CV, 2005 WL 1812624, at *5 (Tenn. Ct. App. Aug. 1, 2005)). But it is the financial connections that are at the heart of the counties' standing argument.

The State defendants and intervenors maintain that the counties suffer no direct injury from the ESA Act. This is where the financial connections come into play. Each

participating student is still "counted in the enrollment figures for the LEA in which the participating student resides."[1] Tenn. Code Ann. § 49-6-2605(b)(1). The ESA Act funds for each participating student[2] are taken "from the state BEP funds otherwise payable to the LEA." *Id.* The defendants claim that the ESA Act reimburses the LEA for the State and local funding taken by the ESA Act for each student for the first three fiscal years of the program. *See* Tenn. Code Ann. § 49-6-2605(b)(2)(A). The reimbursement does not, however, make the counties whole. The reimbursement is actually a grant from a school improvement fund "to be used for school improvement." *Id.* From the "to be used for school improvement" language of Tenn. Code Ann. § 49-6-2605(b)(2)(A), we find that these funds are not a replacement for the operational funds taken.[3] Furthermore, the defendants speak as if the funding was guaranteed, but the language "subject to appropriation" demonstrates that it is not. *Id.*[4]

Finally, the State defendants and intervenors argue that the charters of the plaintiffs establish a separation between the county governments and the local school systems that precludes the counties from having standing. They argue that the county governments do not administer the school system and refer to charter provisions for support. This is true. But we have already noted that there are fiscal effects upon the budgets the counties must adopt that are caused by the ESA Act. The State defendants argue that there is "no budgetary injury resulting from the ESA Program, since the Program has no impact on their ability to adopt a school budget." It is not the ability of the Metro and Shelby county governments to adopt a school budget that is affected; it is the size of those budgets and the use of the reimbursement "replacement" funds.

---

[1] This counting requirement by itself appears to meet the direct injury requirement for standing because it inflates the calculation of the amount of local taxes that must be raised and appropriated by the county. Combined with the maintenance of effort statutes, Tenn. Code Ann. §§ 49-2-203(a)(10)(A)(ii), 49-3-314(c)(1), the counting requirement keeps the county appropriations for the county school system artificially high.

[2] Tenn. Code Ann. § 49-6-2605(a) states in pertinent part:

> The maximum annual amount to which a participating student is entitled under the program must be equal to the amount representing the per pupil state and local funds generated and required through the basic education program (BEP) for the LEA in which the participating student resides, but must not exceed the combined statewide average of required state and local BEP allocations per pupil.

[3] The April 23, 2019 fiscal memorandum prepared for HB0939/SB0795, which became the ESA Act, discusses increased local expenditures, states that "[t]here will be a shift in BEP funding," and indicates that an additional unknown amount of funds would be passed along to the private schools from Title I, Title II, and Title IV.

[4] The General Assembly often includes such language to avoid creating entitlements. *See* Tenn. Code Ann. § 49-3-307(b) (providing that BEP factors "shall be implemented in accordance with funding as made available through the general appropriations act"); *State ex rel. Metro. Gov't of Nashville & Davidson Cnty. v. State*, 534 S.W.3d 928, 932 n.4 (Tenn. Ct. App. 2017).

We conclude that the Metro and Shelby County governments have standing to bring this action.

## II.    Tennessee Constitution, Article XI,  Section 9, Paragraph 2

The plaintiffs maintain that the ESA Act violates the second paragraph of article XI, section 9 of the Tennessee Constitution. The pertinent language of that paragraph is as follows:

> any act of the General Assembly private or local in form or effect applicable to a particular county or municipality either in its governmental or proprietary capacity shall be void and of no effect unless the act by its terms either requires the approval by a two-thirds vote of the local legislative body of the municipality or county, or requires approval in an election by a majority of those voting in said election in the municipality or county affected.

All but the first paragraph of article XI, section 9 originates from the Constitutional Convention of 1953. These amendments are collectively known as the Home Rule Amendments. They were proposed as three separate amendments by the convention. JOURNAL AND PROCEEDINGS OF THE CONSTITUTIONAL CONVENTION 1953, 306, 1129 (1953).  The second paragraph was amendment number 6. *Id.* It was adopted by the convention as "Resolution Relative to Home Rule for Cities and Counties as to Local Legislation" on July 15, 1953.  *Id.*

Interpreting constitutional provisions is much like interpreting statutes.  Courts focus on intent and use a variety of rules to discern that intent. "We must interpret constitutional provisions in a principled way that attributes plain and ordinary meaning to their words and that takes into account the history, structure and underlying values of the entire document." *Estate of Bell v. Shelby Cnty. Health Care Corp.*, 318 S.W.3d 823, 835 (Tenn. 2010) (citations omitted). The history of the provision itself, including the circumstances precipitating its creation, can also be important in understanding its spirit and meaning. *Gaskin v. Collins*, 661 S.W.2d 865, 867 (Tenn. 1983). The history of the constitutional provision includes pertinent comments from the constitutional convention that created the provision and the circumstances that drove its creation. *See, e.g., Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 703 (Tenn. 2009) (discussing "the misuse of private acts against municipal governments" as the impetus for part of article XI, section 9); *Tenn. Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 151 (Tenn. 1993) (citing the comments of Delegate Helms regarding the need for flexibility in school funding); *Gaskin*, 661 S.W.2d at 867-68 (relating the effect of the history of post-civil war disenfranchisement on article I, section 5 of the Tennessee Constitution).

Defendants argue that article XI, section 9, paragraph 2 does not apply to the ESA Act because education is a state function and because the ESA Act applies to LEAs, not counties. We have already addressed the LEA argument in the context of standing. Tennessee Code Annotated section 49-1-103(2) defines an LEA as "any county school system, city school system, special school district, unified school system, metropolitan school system or any other local public school system or school district created or authorized by the general assembly." Thus, LEAs include metropolitan and county school systems. Giving an entity a new name does not change the nature of the entity or its relationship to the county government that funds it.

The State defendants argue that "[t]he Tennessee General Assembly has exclusive authority under the Tennessee Constitution to make decisions regarding the provision of education," citing article XI, section 12 of the Tennessee Constitution, which states:

> The State of Tennessee recognizes the inherent value of education and encourages its support. The General Assembly shall provide for the maintenance, support and eligibility standards of a system of free public schools. The General Assembly may establish and support such postsecondary educational institutions, including public institutions of higher learning, as it determines.

The State observes that the legislature has "plenary and exclusive authority" to provide for public schools. *S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 715 (Tenn. 2001). We note that the plenary authority derived from article XI, section 12 relates to *public schools*, not private[5] ones. When encouraging, assisting or benefiting private schools, the General Assembly is operating outside that plenary power. Furthermore, having plenary authority over public schools does not mean that other provisions of the Tennessee Constitution do not or cannot apply.

Acting pursuant to laws passed by the General Assembly, the State of Tennessee could operate the public school system throughout the state without involving the counties. But that is not how the State has chosen to operate. Upon examining the statutes governing education, the Tennessee Supreme Court has declared "that a partnership has been established between the State and its political subdivisions to provide adequate educational opportunities in Tennessee." *State ex rel. Weaver v. Ayers*, 756 S.W.2d 217, 221 (Tenn. 1988). This "partnership" has been in place for over 100 years. *See, e.g.*, 8 Robert H. White, MESSAGES OF THE GOVERNORS OF TENNESSEE 1899-1907, 282 (1972) (quoting Governor James B. Frazier's legislative message of January 3, 1905: "Our system of public education in Tennessee is a dual system, the schools being partly supported by the State and partly by the counties."). The State vests substantial authority in local boards of

---

[5] A "participating school" under the ESA Act "means a private school, as defined by § 49-6-3001(c)(3)(A)(iii)," that satisfies certain requirements. Tenn. Code Ann. § 49-6-2602(9).

education. *See* Tenn. Code Ann. § 49-2-203. The State also mandates that counties help pay for the county schools. Tenn. Code Ann. § 49-2-101(6). Vesting such authority in county entities and officials establishes a partnership in the State's education efforts. This arrangement makes article XI, section 9 potentially applicable.

Based on the language of article XI, section 9, paragraph 2, there are three requirements for paragraph 2 to apply: the act must be "[1] private or local in form or effect [2] applicable to a particular county or municipality [3] either in its governmental or proprietary capacity." We must examine each of these requirements.

Private or local in form or effect

In *Farris v. Blanton*, 528 S.W.2d 549, 552 (Tenn. 1975), the Court held that if legislation was "potentially applicable throughout the state it is not local in effect even though at the time of its passage it might have applied to [one county] only." S*ee also Civil Serv. Merit Bd. of City of Knoxville v. Burson*, 816 S.W.2d 725, 729 (Tenn. 1991); *County of Shelby v. McWherter*, 936 S.W.2d 923, 935 (Tenn. Ct. App. 1996). The *Farris* Court further cautioned that, "in determining potential applicability we must apply reasonable, rational and pragmatic rules as opposed to theoretical, illusory or merely possible considerations." *Farris,* 528 S.W.2d at 552; *see also County of Shelby*, 936 S.W.2d at 935.

Designation as a "public act" by the General Assembly is not controlling. "Such a criterion would emasculate the purpose of the amendment." *Farris*, 528 S.W.2d at 551. Similarly, naming the act a "pilot program" is not controlling. In determining whether legislation is "private or local in form or effect," "we look to substance and not to form." *Id.* at 554.

The creators of article XI, section 9 did not define the phrase "private or local in form or effect." "Constitutions are to be construed with reference to well known practices and usages." *LaFever v. Ware*, 365 S.W.2d 44, 47 (Tenn. 1963). Taking the words "private or local in form or effect" with their ordinary meanings seems to denote an act that was not a general law. The drafters of the language would have understood that "[a] general law is one 'neither for one or more particular persons, nor to operate exclusively in particular part or parts of a state.'" *Nashville Gas & Heating Co. v. City of Nashville*, 152 S.W.2d 229, 234 (Tenn. 1941) (quoting 2 BOUV. LAW DICT. (Rawle's 3rd Rev.) p. 3133)). Because the ESA Act, by its terms, was designed "to operate exclusively in particular . . . parts of the state," *i.e.*, Davidson and Shelby counties, it is not a general law. *Id.* Consequently, it must be considered local in effect.

Applicable to a particular county or municipality

Greater Praise intervenors maintain that the language "applicable to a particular county or municipality" means that the challenged act can apply to only one county. Tenn.

- 9 -

Const. art. XI, §9, ¶ 2. We cannot derive that meaning from the language used when viewed in context, and neither has the Tennessee Supreme Court.

In *Leech v. Wayne County*, 588 S.W.2d 270, 271 (Tenn. 1979), the Tennessee Supreme Court addressed the constitutionality of an act that attempted to implement the rather drastic revamp of Tennessee local government proposed by the 1977 Constitutional Convention and approved by the electorate. Section 8 of Chapter 934 of the Public Acts of 1978 gave county legislative bodies the authority to decide whether each office in a multi-member district would be designated separately on the ballot, with candidates required to run on the basis of the separately designated offices. *Leech*, 588 S.W.2d at 274. However, by population bracket designation, this discretion was taken away from Wayne and Bledsoe counties, and they were required to have separately designated offices for which candidates were to run in multi-member districts. *Id.* This exception was challenged as to Wayne County for violating article XI, section 9, paragraph 2. The Supreme Court concluded that the provision did indeed violate Article XI, § 9, paragraph 2, stating:

> Where, however, the General Assembly has made a permanent, general provision, applicable in nearly ninety of the counties, giving the local legislative bodies discretion as to the method of election of their members, we do not think it could properly make different provisions in two of the counties, by population bracket, in the manner attempted here. Insofar as Wayne County is concerned, this amounted to nothing more than a private act relating to the composition of its county legislative body, without any statement of reasons and without requirement of a local referendum.

*Id*. The Supreme Court, having applied the language of article XI, section 9, paragraph 2 to an act making an exception for two counties without a referendum, has bound the lower courts to this interpretation. *Webb*, 346 S.W.3d at 430 ("'Once the Tennessee Supreme Court has addressed an issue, its decision regarding that issue is binding on the lower courts.'") (quoting *Morris v. Grusin*, No. W2009-00033-COA-R3-CV, 2009 WL 4931324, at *4 (Tenn. Ct. App. Dec. 22, 2009)) .

*Wayne County* is consistent with the constitutional convention debates on this language. If there is doubt about language in the constitution, "it is the first obligation of the Court to go to the Constitutional Convention which adopted this provision and see from these proceedings what the framers of this resolution intended it to mean." *Shelby Cnty. v. Hale*, 292 S.W.2d 745, 748 (Tenn. 1956). The final language of what would become the second paragraph of article XI, section 9 was presented by Delegate Lewis Pope, Chair of the Committee on Editing. TENNESSEE CONSTITUTIONAL CONVENTION JOURNAL OF 1953, at 1121. The committee made one change, inserting the words, "applicable to a particular county or municipality, either in its governmental or its proprietary capacity." *Id.* The following exchange occurred:

Mr. Burn: Do I understand that if there is an act pertaining to more than one municipality, that the legislature can enact that without referendum?

Mr. Pope: No, that would be a local bill if it applies to one or two.

*Id.* Mr. Pope's comments on the language his committee wrote indicate that more than one county or municipality could be included in the act and article XI, section 9, paragraph 2 would still apply.

### Governmental or proprietary capacity

Long ago, the Tennessee Supreme Court held that "[s]pecial statutes affecting counties in their governmental or political capacity are not invalid under the sections of the constitution prohibiting the enactment of special or local laws*." Knox Cnty. v. State ex rel. Nighbert*, 147 S.W.2d 100, 102 (Tenn. 1940). The court was referring to article XI, section 8. *Id.* In 1950, the Supreme Court stated that "[e]ducation is a governmental function and in the exercise of that function the county acts in a governmental capacity." *Baker v. Milam*, 231 S.W.2d 381, 383 (Tenn. 1950). The *Baker* Court further held that, because the act itself disclosed a reasonable basis for the discrimination and because it only affected Decatur County in its governmental capacity, it did not violate article XI, section 8. *Id.* Three years later, the constitutional convention added new language to article XI, section 9 stating that an act, "private or local in form or effect applicable to a county or municipality in either its governmental or proprietary capacity," must have local approval to be effective. The apparent purpose of the language "either in its governmental or proprietary capacity" is to prevent local laws such as the one discussed in *Baker* from becoming effective without local approval.

The intervenors argue that the ESA Act affects citizens in their private rights, not counties. In 1925, a private act was passed to require Knox County to provide free text books in grammar schools. The act was challenged in *State ex. rel. Scandlyn v. Trotter*, 281 S.W. 925 (Tenn. 1926), as a violation of article XI, section 8. The Supreme Court determined that the act affected primarily private rights, so the exception from article XI, section 8 for county governmental functions did not apply. *Id.* at 927. The Court found the act invalid because it was supported by no rational basis to justify singling out Knox County to bear the burden or receive the benefit of the legislation. *Id.*

For article XI, section 9 to apply, the ESA Act must be "applicable to a particular county or municipality either in its governmental or proprietary capacity." Given that the purpose of article XI, section 9 is to give local control over local legislation, and that we have already found that the ESA Act is local in effect and is applicable to Davidson and Shelby counties in their governmental capacities, we conclude that whether the Act also affects or primarily affects private rights is irrelevant to the analysis under article XI, section 9.

We hold that the ESA Act is [1] local in effect, and [2] applicable to Davidson and Shelby counties [3] in their governmental capacity. It follows that article XI, section 9, paragraph 2 of the Tennessee Constitution applies to Davidson and Shelby counties and that the ESA Act is unconstitutional as applied to them due to the lack of the required referendums or votes of the county commissions.

CONCLUSION

We affirm the trial court as to the standing of Davidson and Shelby counties to bring this action and as to the determination that the ESA Act is unconstitutional as applied to Davidson and Shelby counties.[6] Costs are taxed to the State of Tennessee, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[6] The Greater Praise intervenors asked this court, at oral argument and in their brief, to separately consider the constitutionality of the ESA Act as it affects the ASD. This is an analysis we are unwilling to undertake. The ASD is not a party. Neither of the questions this Court determined to take mentioned or focused to any extent on the ASD. The question raised by the Greater Praise intervenors is not an issue this court agreed to hear.